770 P.2d 1165

**STATE of Arizona, Appellee,**

v.

**Edward Lonzo McCALL, Appellant.**

**No. CR–86–0038–AP/PC.**

Supreme Court of Arizona,
En Banc.

March 7, 1989.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Gerald R. Grant, Asst. Attys. Gen., Phoenix, for appellee.

John M. Antieau, Phoenix, for appellant.

MOELLER, Justice.

## JURISDICTION

This consolidated proceeding involves a direct appeal after a resentencing and two Rule 32 post-conviction relief proceedings. In 1981, a jury convicted Edward Lonzo McCall (defendant) of two counts of first degree murder and nine other felonies.[1] Defendant was sentenced to death on the two murder counts and to terms of years on the other counts. On appeal, this court affirmed all the convictions and sentences. *State v. McCall,* 139 Ariz. 147, 677 P.2d 920 (1983), *cert. denied,* 467 U.S. 1220, 104 S.Ct. 2670, 81 L.Ed.2d 375 (1984) (hereafter *"McCall I"*). Later, by order of June 12, 1985, we denied review of defendant's first petition for post-conviction relief.

Defendant filed a second petition for post-conviction relief claiming: (1) a denial of equal protection predicated on the court's denial of a severance from his co-defendant Robert Cruz; (2) application of the wrong standard of proof as to aggravating circumstances; and (3) ineffectiveness of counsel at sentencing and during the pendency of his first petition for post-conviction relief. The trial court denied the first two claims but granted relief on the third, as a result of which a resentencing was ordered. The trial court's denial of relief on the equal protection claim is now before us for review. At the resentencing, defendant was again sentenced to death on the murder charges and to terms of years on the other charges. The propriety of these sentences is before us on defendant's direct appeal following resentencing.

Following resentencing and the death of the trial judge, defendant filed a third petition for post-conviction relief requesting discovery and an evidentiary hearing to inquire into the trial judge's mental competence at the time of the resentencing. Denial of relief on that third petition for post-conviction relief is also before us for review.

Following oral argument in these consolidated matters, the United States Supreme Court issued its opinion in *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), which held the Oklahoma statutory aggravating circumstance, "especially heinous, atrocious, or cruel," to be unconstitutional as there applied. Because of *Maynard,* we requested supplemental briefing in this case to assist us in determining what effect, if any, *Maynard* has on this case. The last supplemental brief was filed December 21, 1988.

We have jurisdiction under Ariz. Const. art. 6, § 5(3), A.R.S. § 13–4031, and Ariz.R. Crim.P. 32.9(c), 17 A.R.S.

## ISSUES PRESENTED

1. Was defendant denied equal protection of the laws by not being granted a trial separate from his co-defendant, Robert Cruz?

2. Did the trial court improperly consider defendant's failure to testify at trial or at resentencing?

3. Was the trial court justified in finding that two statutory aggravating circumstances existed?

4. What is the effect of *Maynard v. Cartwright,* if any, on the death penalty imposed in this case?

5. Did the trial court err by finding no mitigating factors?

---

1. The underlying facts in this case can be found in this court's opinion in the appeal by a co-defendant, *State v. Cruz,* 137 Ariz. 541, 672 P.2d 470 (1983).

6. Does the record support the factual findings necessary to death-qualify the defendant under *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), and *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987)?

7. Was defendant denied effective assistance of counsel at his resentencing?

8. Did the trial court err by imposing aggravated, consecutive sentences on some of the non-murder counts?

9. Did the trial court abuse its discretion by dismissing defendant's third petition for post-conviction relief without permitting discovery and without holding an evidentiary hearing concerning the sentencing judge's mental competence?

10. Does our independent review of the evidence and our proportionality review of the sentence support imposition of the death penalty?

We acknowledge that defendant has also again challenged the constitutionality of Arizona's death penalty statute. His challenge is twofold: first, he contends the statute denies him the right to trial by jury; second, he contends the statute is unconstitutional because it gives no guidance as to what constitutes a mitigating circumstance and lacks standards for balancing aggravating and mitigating factors. These constitutional issues were resolved against defendant in *McCall I*. Defendant's challenge has been refined from the time of his first appeal by the additional argument that the Arizona Constitution's right of trial by jury is more extensive than that of the United States Constitution. We addressed this issue in *State v. Roscoe*, 145 Ariz. 212, 226, 700 P.2d 1312, 1326 (1984), *cert. denied*, 471 U.S. 1094, 105 S.Ct. 2169, 85 L.Ed.2d 525 (1985), and need not revisit it here.

With respect to the jury trial issue, we acknowledge that the majority of the Ninth Circuit reached a result contrary to ours in *Adamson v. Ricketts*, 865 F.2d 1011 (9th Cir.1988). To apply *Adamson* would run counter not only to our cases, but also, we feel, to United States Supreme Court cases. Accordingly, as we recently noted, we decline to follow *Adamson* at this time but will, of course, follow and apply it if it is upheld by the United States Supreme Court. *See State v. Vickers*, 159 Ariz. 532, 543 n. 2, 768 P.2d 1177, 1188 n. 2 (1989).

### DISCUSSION

1. Equal Protection Claim

■ In defendant's second petition for post-conviction relief he contended that he was denied equal protection of the laws when the court refused to sever his trial from his co-defendant, Robert Cruz. The trial court denied relief on that claim and the propriety of that denial is now before us.

In *McCall I*, defendant also claimed he was entitled to a new trial because the trial court denied his motion for a severance from Cruz. We disagreed and affirmed his conviction. When Cruz later appealed, however, we agreed with his request for a severance and granted him a new trial on that ground. *See State v. Cruz*, 137 Ariz. 541, 672 P.2d 470 (1983). Defendant now argues that he has been denied equal protection because his co-defendant received a separate trial and he did not. We disagree.

In *Cruz*, this court ruled that before severance is required, the defenses of the co-defendants must be irreconcilable; they must be antagonistic to the point of being "mutually exclusive." We specifically held in *Cruz* that Cruz's defense and McCall's defense were *not* mutually exclusive so as to require severance. We granted Cruz a severance because specific evidence properly elicited by McCall's attorney was so prejudicial to Cruz that Cruz was entitled to a separate trial. *Cruz*, 137 Ariz. at 545, 672 P.2d at 475.

The properly admitted testimony in McCall's case demonstrated that a key prosecution witness had reason to fear Cruz. The witness linked Cruz to organized crime and past "hit" contracts; this evidence was extremely prejudicial to Cruz and would have been inadmissible in a separate trial of Cruz. For this reason, and for this reason alone, we ordered a separate trial for Cruz. Obviously, McCall's

defense was not prejudiced by evidence he himself introduced. McCall was not entitled to a separate trial although Cruz was. The trial court properly concluded that defendant was not entitled to relief on equal protection grounds.

### 2. "Comments" on Defendant's Failure to Testify

■ At the pre-sentence hearing, defendant exercised his right of allocution and made an unsworn statement to the trial judge. In his special verdict, the trial judge said:

> The defendant did not testify at the trial in this case nor at the original presentence hearing.... Now at the presentence hearing, the defendant for the first time has told his version of what happened in the Redmond home. To believe his version, the Court would have to disbelieve the jury verdict of conspiracy to commit murder and the two first degree premeditated jury verdicts. The testimony given by Mr. McCall was on allocution only, not under oath and not subject to cross-examination. The jury was denied the opportunity to hear it. This Court does not believe it.

Defendant contends that these comments unconstitutionally penalize him for exercising his constitutional right not to testify at trial or sentencing. We disagree.

Defendant, of course, has a constitutional right not to testify at his trial, U.S. Const. amend. V; Ariz. Const. art. II, § 10; that right extends to the sentencing stage as well. *See Estelle v. Smith*, 451 U.S. 454, 462–63, 101 S.Ct. 1866, 1873, 68 L.Ed. 2d 359, 369 (1981). Defendant also has a right of allocution. Ariz.R.Crim.P. 26.-10(b)(1), 17 A.R.S. *See, e.g., State v. Davis*, 112 Ariz. 140, 539 P.2d 897 (1975). The underlying objective of the allocution rule is to allow the defendant to make a mitigating statement for the judge to consider in determining the sentence. *State v. Nelson*, 122 Ariz. 1, 592 P.2d 1267 (1979).

■ However, defendant's claim that the trial judge penalized him for exercising his right not to testify mischaracterizes the judge's remarks. Defendant, by offering his allocution statement, required the trial judge to assess his credibility. The trial judge simply stated his findings with respect to credibility and defendant's proffered mitigation. Because defendant did not testify at trial, the judge was the sole assessor of the credibility of defendant's version of the crimes at sentencing. The trial judge merely acknowledged that fact and stated his reasons for rejecting defendant's statements.

### 3. Statutory Aggravating Circumstances

#### A. *A.R.S. § 13–703(F)(5)—Crime Committed for Pecuniary Gain*

The trial court found that defendant committed the murders in exchange for a portion of a $10,000.00 fee. This court reviewed that finding in defendant's earlier appeal and we agreed with the trial court. "There is no doubt that A.R.S. § 13–703(F)(5) applies to the 'hired gun' situation." *McCall I*, 139 Ariz. at 161, 677 P.2d at 934. Defendant does not challenge this finding in this appeal. Our review of the record again satisfies us that there is ample support for the finding that this was a hired gun situation. Thus, the court properly found the aggravating circumstance of pecuniary gain.

■ The trial court also stated that "it is reasonable to conclude from the evicence [sic] that defendant McCall shared in the profits of the jewelry and money that the victims were robbed of." This statement is also not challenged on appeal. However, it is unclear to us from this statement whether the trial court found beyond a reasonable doubt that defendant actually shared in, or intended to share in, the profits from the robberies. Statutory aggravating circumstances must be found to exist beyond a reasonable doubt before they may be used against a defendant. *State v. Richmond*, 136 Ariz. 312, 666 P.2d 57, *cert. denied*, 464 U.S. 986, 104 S.Ct. 435, 78 L.Ed.2d 367 (1983). Accordingly, we have disregarded this statement in our analysis on appeal. This, however, has no bearing on the hired gun evidence, which, in itself,

constitutes an appropriate finding of murder for pecuniary gain.

### B. A.R.S. § 13–703(F)(6)—Especially Heinous, Cruel, or Depraved

At resentencing, the trial judge again specifically found that the murder of William Patrick Redmond had been committed in an especially heinous, cruel, *and* depraved manner and that the murder of Mrs. Phelps was committed in an especially depraved manner. Defendant challenges these findings in this appeal. A finding of any one of the three alternative elements enumerated in A.R.S. § 13–703(F)(6) is sufficient to constitute a statutory aggravating circumstance. *State v. Wallace*, 151 Ariz. 362, 728 P.2d 232 (1986). The factual record has not changed since we reviewed these aggravating factors in *McCall I.* There, we held that all three elements of A.R.S. § 13–703(F)(6) were present. Arizona case law interpreting A.R.S. § 13–703(F)(6) has remained consistent since our decision in *McCall I.* Thus, we see no reason to restate our prior findings.

### 4. Maynard v. Cartwright

■ Following oral argument in this case, the United States Supreme Court issued its decision in *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). In *Maynard*, the Court held that Oklahoma's statutory aggravating circumstance ("especially heinous, atrocious, or cruel") was unconstitutionally vague because it did not sufficiently guide the jury in deciding whether to impose the death penalty.

Because of *Maynard*, we requested additional briefs from the parties on the issue of the constitutionality of A.R.S. § 13–703(F)(6). The last such brief was filed December 21, 1988. Since then we have considered the identical issue in *State v. Vickers*, 159 Ariz. at 543, 544, 768 P.2d at 1188–1189 (1989). In *Vickers*, while recognizing that the majority of the Ninth Circuit took a different view in *Adamson v. Ricketts*, we concluded that the Arizona statute was constitutional notwithstanding *Maynard*. For reasons which we have previously stated, we will follow *Vickers* for now.

### 5. Mitigating Circumstances

Defendant claims the trial court disregarded evidence of a mitigating circumstance. The evidence consisted of a letter from defendant's correctional program officer stating that defendant presented no management or disciplinary problems while in custody and had received no citations. Defense counsel referred to this letter at the presentence hearing when it was marked for identification but not offered into evidence. It was also referred to in the presentence report that the trial judge read and considered. In its special verdict, the trial court found that "there are no mitigating circumstances sufficiently substantial to outweigh the aggravating circumstances which were proven by the overwhelming weight of the evidence and beyond a reasonable doubt." Defendant asserts that the record fails to show that the trial court considered the letter from the correctional officer. The state contends the letter is insubstantial evidence of mitigation and does not outweigh the aggravating factors the court found.

■ Although the trial court did not specifically mention the letter (which was never offered or received into evidence), it did state that it found no mitigating circumstances sufficiently substantial to outweigh the aggravating circumstances. Although the preferred practice is for a sentencing judge to list all factors considered in mitigation, *State v. Leslie*, 147 Ariz. 38, 50, 708 P.2d 719, 731 (1985), we have never required a sentencing judge to make detailed, exhaustive findings or cite every claim or nuance advanced by defendant or his counsel in argument. *State v. Beaty*, 158 Ariz. 232, 762 P.2d 519 (1988). We find no error in the court's failure to specifically refer to the letter.

■ Defendant also asserts that the trial court impermissibly limited the presentation of mitigation evidence to those matters defendant could not have presented at the first sentencing. The record shows no such ruling. Defendant attempts to sub-

stantiate this claim by citing to comments made by the trial judge at an evidentiary hearing on defendant's second petition for post-conviction relief. These comments do not indicate any limitation whatsoever relative to the resentencing. No limitation on defendant's presentation of mitigating evidence was made.

### 6. *Enmund/Tison* Findings

■■■■ Defendant contends that he was sentenced to death in violation of *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). In *Enmund,* the United States Supreme Court held that a death sentence could not be imposed without a finding beyond a reasonable doubt that the defendant in fact killed, attempted to kill, or intended to kill. 458 U.S. at 798, 102 S.Ct. at 3377, 73 L.Ed.2d at 1152.

Defendant notes that in Arizona first degree murder may permissibly be found based on a "knowing" mens rea, as distinguished from an "intentional" mens rea. *State v. Neal,* 143 Ariz. 93, 692 P.2d 272 (1984). From this, he argues that the guilty verdict is not necessarily a finding that he intended to kill within the meaning of *Enmund.* Further, he argues that since the jury was instructed on accomplice liability, there has been no finding that he personally killed, attempted to kill, or intended to kill. He contends that the intent required to be an accomplice is something less than an intent to kill. Defendant's argument fails for several reasons.

First, this is not a felony murder case as were *Enmund* and *Tison.* This defendant was charged with and convicted of premeditated murder as well as conspiracy to commit premeditated murder. The jury findings alone are a sufficient basis for death-qualifying the defendant under *Enmund.*

Second, the trial court expressly found that defendant intended to kill. The trial court stated:

> [Defendant] could not only have reasonably foreseen that his conduct in the course of the commission of the offense would cause death to another person, he in fact intended that result in anticipation of being paid for the murders.

Although this finding was made in the context of rejecting a proffered mitigating factor, it satisfies the *Enmund* requirements. *See State v. McDaniel,* 136 Ariz. 188, 199, 665 P.2d 70, 81 (1983).

Lastly, since the Supreme Court's decision in *Enmund,* the Court issued *Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), which alters the *Enmund* analysis. In *Tison,* the defendants were found guilty of felony murder and sentenced to death. They challenged their sentences under *Enmund.* The Court held that a defendant can be sentenced to death without having a specific "intent to kill." Rather, the *Enmund* culpability requirement can be satisfied by a finding of "reckless disregard for human life" combined with "major participation in the underlying felony." 481 U.S. at 158, 107 S.Ct. at 1688, 95 L.Ed.2d at 145. Thus, even under the *Tison* felony murder standard, defendant could constitutionally be sentenced to death because his convictions demonstrate both a reckless disregard for human life and major participation in the crimes leading to the deaths.

Defendant and two other hired killers plotted to kill Patrick Redmond on New Year's Eve 1980. They broke into his home, herded Redmond, his wife, and his elderly mother-in-law around their home at gunpoint. The victims were forced to lie down on a bed with their hands taped behind their backs and socks stuffed in their mouths. Redmond's throat was slashed from ear to ear. All three victims were shot in the back of the head; two of them died from the wounds. The jury was instructed that it could find defendant guilty of first degree murder if he intentionally or knowingly caused death or if he intentionally "aid[ed], counsel[ed], agree[d] to aid or attempt[ed] to aid another person in planning or committing the offense." The jury's verdict and the trial court's finding fulfill the requirements of *Enmund/Tison.*

### 7. Assistance of Counsel at Resentencing

■■■ Defendant was granted a resentencing because his earlier counsel had mistakenly advised him not to talk to the pro-

bation officer preparing the presentence report. Defendant now claims his counsel at the resentencing was also ineffective. This claim is made through appointed appellate counsel and not the appointed counsel who handled the resentencing.

On appellate review, there is a strong presumption that trial counsel's conduct was reasonable. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, 694–95 (1984). The Supreme Court has held that a defendant must affirmatively prove prejudice, which requires a showing that, if the case had been handled differently, it probably would have changed the result. *Id.* at 693–94, 104 S.Ct. at 2067–68, 80 L.Ed.2d at 697–98. We have held that a defendant must prove ineffectiveness to a demonstrable reality rather than a matter of speculation. *State v. McDaniel*, 136 Ariz. 188, 198, 665 P.2d 70, 80 (1983). We have further held that the determination of counsel's ineffectiveness must be determined from the record. *State v. Bush*, 148 Ariz. 325, 328, 714 P.2d 818, 821 (1986).

Defendant claims that his counsel at sentencing failed to challenge the trial court's findings that the killings were especially heinous, cruel, or depraved under A.R.S. § 13–703(F)(6). Our earlier discussion of the subject demonstrates that defendant was not prejudiced by any such claimed failure.

Defendant next faults counsel for not asserting the lack of an *Enmund* finding. As discussed above, the requisite *Enmund* findings were made. Defendant also claims that counsel failed to present available mitigating evidence. However, the evidence referred to was all covered in the various presentence reports that were before the court and were considered by the court.

Lastly, defendant asserts that counsel "refused" to argue during the resentencing and such "refusal" constituted ineffective assistance of counsel. An examination of the record reveals the following: At the presentence hearing of January 28, 1986, defense counsel advised the court that the defense had no witnesses to

present but that the defendant wished to make a statement. The defendant then personally made a lengthy statement to the court. Following the statement considerable discussion ensued about recent Arizona cases and how they might impact on whether consecutive sentences could be imposed on the non-murder counts. The sentencing was set for two days later, the court indicating it would give counsel an opportunity to argue the matter of consecutive sentences at that time. The court also said that at the resumed hearing it would "present upon the open record the Court's special verdict, as required under Section 13–703 with reference to aggravation and mitigation." Although the court had indicated it would entertain arguments on the consecutive sentences issues at the sentencing two days later, the prosecutor nonetheless proceeded to argue and present his authorities in support of consecutive sentences. The following colloquy then occurred:

> THE COURT: Do you have anything you wanted to add or want to be heard on?
>
> MR. LOGAN (Defense Counsel): Your Honor, I'll wait until Thursday and review some of the information that I've just received.
>
> Then I'll argue to the Court.

We set forth the details of the January 28 hearing at some length because they show that the trial judge may well have believed that defense counsel had exhausted his arguments except possibly with respect to the issue of consecutive sentences.

When the sentencing hearing reconvened, on January 30, the trial court called counsel to the bench and, without comment or objection from them, handed each a copy of his prepared, signed special verdict dealing solely with the two murder counts. The court then made its formal pronouncement of guilt with respect to each of the eleven counts and then began to read its special verdict with respect to the two murder counts.

At that point, the prosecutor interrupted the judge and asked: "Were you going to

ask defense counsel if he wanted to make any argument on behalf of his client?" The judge responded that he would at "the appropriate time" and then invited defense counsel to "proceed with whatever [he] may have to say on behalf of his client" and, after that, "I will hear anything additional that Mr. McCall may have to present." Defense counsel then argued in mitigation, closing with a suggestion that the special verdict issues were "moot." The trial court clearly indicated its belief that the issues were not "moot" and pointed out that the special verdict was not yet filed or of record. Thereafter, the defendant personally indicated to the court that he had nothing to add to his earlier statement. The record wholly fails to support defendant's present argument that counsel was ineffective for failing to submit yet more argument to a judge who had been intimately involved with the case for several years.

### 8. Aggravated, Consecutive Sentences on the Non–Murder Counts

▮ Defendant contends that the trial court erred by failing adequately to state its reasons in support of the aggravated and consecutive sentences on the non-murder counts.[2] A.R.S. § 13–702(C) permits a trial court to impose a greater than presumptive sentence if the aggravating factors that form the basis of the sentence are found to be true based on "any evidence or information introduced or submitted to the court." To fulfill the requirements of A.R.S. § 13–702(C), "the evidence or information introduced or submitted" to the court must be made part of the record. *State v. Jones*, 147 Ariz. 353, 355, 710 P.2d 463, 465 (1985).

Defendant claims that the court's reasons for imposing aggravated sentences do not appear in the record. Immediately before sentencing, the trial court stated:

> Upon consideration of all the facts, law and circumstances relevant here, ... [t]he Court further finds that there are aggravating circumstances sufficiently substantial to call for a term of incarceration of more than the presumptive term as set by statute. These aggravating circumstances are as stated by the Court on the record.

Prior to this statement the trial court had just set forth, in its special verdict, detailed findings of aggravating circumstances with respect to the first degree murder counts. The factors supporting the aggravating circumstances for the murder counts are equally applicable to the remaining counts. The trial court's failure to cite A.R.S. § 13–702(C) does not indicate noncompliance with the provisions of that section. *See State v. Gannon*, 130 Ariz. 592, 595, 638 P.2d 206, 209 (1981). Under the circumstances of this case as outlined in the special verdict, the reasons for aggravated sentences were adequately set forth.

▮ Defendant also claims that the trial court erred by failing adequately to state reasons for consecutive sentences as A.R.S. § 13–708 requires. A.R.S. § 13–708 states that "if multiple sentences of imprisonment are imposed on a person at the same time," then the sentences imposed by the court "shall run *concurrently* unless the court expressly directs otherwise, in which case the court shall set forth on the record the reason for its sentence." (Emphasis added).[3] We have already held that the trial court adequately complied with § 13–702(C) for the purpose of imposing aggravated sentences in this case. This compliance also met the requirements of A.R.S. § 13–708 for consecutive sentences. The same reasons for aggravated and consecu-

---

**2.** Besides the two death penalties, defendant was also sentenced to: 1) life imprisonment for one count of conspiracy to commit first degree murder; 2) to twenty-one years for one count of first degree burglary to be served consecutively to the conspiracy sentence; 3) to three concurrent terms of twenty-one years each for three counts of kidnapping to be served consecutively to the burglary sentence; 4) to three concurrent terms of twenty-one years each for armed rob-

bery to be served consecutively to the kidnapping sentences; and 5) to twenty-one years for one count of attempted first degree murder to be served consecutively to the armed robbery sentences.

**3.** A 1985 amendment to A.R.S. § 13–708 changed "concurrently" to "consecutively." 1985 Ariz.Sess.Laws, ch. 364, § 9.

tive sentences need not be stated twice. *State v. Bishop*, 137 Ariz. 5, 9, 667 P.2d 1331, 1335 (App.1983).

### 9. Competence of Judge

 The presentence hearing and the resentencing were held before the late Judge Paul W. LaPrade, who had also presided at defendant's original trial and sentencing. Two days after the resentencing, Judge LaPrade underwent brain surgery; two weeks later he died.

During Judge LaPrade's lifetime, the defendant entered no objection to his presiding at the resentencing which he himself had ordered. After the judge's death, defendant filed a third petition for post-conviction relief in which defendant suggested that Judge LaPrade may have been mentally incompetent at the time of resentencing. The petition claimed several alleged irregularities in the proceedings in an attempt to support the suggestion of incompetency. In addition, defendant submitted an affidavit and that of his counsel to support his suggestion.

Defendant requested an evidentiary hearing and moved the trial court for permission to depose the Custodian of Records at Barrows Neurological Institute concerning Judge LaPrade's medical history. Defendant also moved the court to appoint and pay a neurologist to assist him in reviewing and evaluating Judge LaPrade's medical records. The trial court denied the petition without an evidentiary hearing.

A Rule 32 petition for post-conviction relief is addressed to the discretion of the trial court. *State v. Adamson*, 136 Ariz. 250, 265, 665 P.2d 972, 987, *cert. denied*, 464 U.S. 865, 104 S.Ct. 204, 78 L.Ed.2d 178 (1983). We will not disturb the trial court's denial or grant of post-conviction relief absent affirmative abuse of that discretion. *State v. Schrock*, 149 Ariz. 433, 441, 719 P.2d 1049, 1057 (1986). A defendant is entitled to an evidentiary hearing if his petition presents a "colorable claim." *State v. D'Ambrosio*, 156 Ariz. 71, 73, 750 P.2d 14, 16 (1988). A colorable claim exists when the facts alleged by the defendant in

support of his claim, if taken as true, would entitle the defendant to relief. *Id.*

Through the affidavits and the resentencing transcript, defendant points to several items that he claims suggest Judge LaPrade's mental incompetence:

(1) He commented on the defendant's failure to testify at trial;

(2) He began reading his special verdict before hearing argument from counsel;

(3) He did not state aggravating circumstances on the record;

(4) He did not state reasons for imposing consecutive sentences;

(5) He became "angry" when defense counsel claimed his arguments were "moot," when the clerk did not have a notice of appeal ready, and when the prosecutor interrupted him;

(6) He had been hospitalized prior to the presentence hearing and sentencing;

(7) He was readmitted to the hospital two days after sentencing and underwent brain surgery for the removal of blood clots; and

(8) He died two weeks after sentencing.

All of these items, if taken as true, do not support a claim that Judge LaPrade was mentally incompetent at the resentencing. Items 1–4 have already been discussed in this opinion. Item 5 is unsupported by our reading of the transcript. The affidavits submitted in support of Item 5 suggest, at most, a bit of impatience, but not incompetence. Items 6, 7, and 8 are outside the record but, in any event, do not create any presumption of incompetence.

Defendant virtually concedes that the present record is insufficient to support a finding of judicial incompetence, but contends he was entitled to discovery on whether he could find evidence of incompetence.

 There is a dearth of Arizona case law on the subject of claimed judicial incompetence. We believe some helpful analogies may be made to cases in which claims of bias and prejudice are made. A trial judge is presumed to be free of bias or

prejudice. *See State v. Rossi*, 154 Ariz. 245, 741 P.2d 1223 (1987). To overcome the presumption, a party must prove that the judge is biased or prejudiced and must file a motion alleging specific grounds of impartiality. Ariz.R.Crim.P. 10.1, 17 A.R.S. We hold that there is a strong presumption that a duly appointed or elected judicial officer is mentally competent. We have previously rejected voir dire as a vehicle to establish bias and prejudice. *Rossi*, 154 Ariz. at 248, 741 P.2d at 1226. We now likewise reject open-ended discovery as a vehicle to try to establish judicial incompetence.

 We hold that a party who has grounds to suspect judicial incompetence must raise the issue at the first opportunity. We recognize, of course, that in some cases information first discovered after a trial or hearing may raise questions about earlier judicial actions which seemed innocuous at the time without the benefit of the later-acquired knowledge. Unfounded accusations and groundless speculations about judicial competence cannot be entertained as a matter of routine or as an excuse to embark on "fishing expeditions" into a judge's personal life. On the other hand, the desire to preserve the dignity of judicial service cannot be used as a shield for judicial incompetence or as a barrier to legitimate inquiry into those topics.

Balancing these competing factors, we hold that inquiry into a judge's competence, including pursuit of relevant information on the issue of competence, may be entertained, but only when a party meets a threshold requirement of showing evidence of incompetence, including some demonstration on the record of the result of such incompetence. In addition, the party challenging the judge's competence must, of course, show that the issue was raised with proper diligence.

 The trial judge who considered defendant's third petition for post-conviction relief ruled as follows:

Defendant wants a hearing to explore the issue of the effect, if any, of Judge LaPrade's physical illness on his mental competency to afford Defendant a fair hearing at re-sentencing. The request for evidentiary hearing is DENIED.

For purposes of this Motion the Court accepts the affidavits of Defendant and Mr. Logan and the medical condition of Judge LaPrade as discussed in the newspaper articles attached as exhibits to the Petition. Defendant is basically making a complaint about Judge LaPrade's courtroom demeanor on January 30, 1986, to wit: "On the day of re-sentencing, it was apparent to a number of observers that Judge LaPrade was behaving erratically." (Defendant's memorandum, Page 2).

Defendant also complains that the Judge had prepared the Special Verdict before the January 30, 1986 hearing. The record reflects that nothing that happened at the January 30, 1986 hearing affected the Special Verdict, since it was prepared prior to the January 30, 1986 hearing.

Defendant makes no allegations about the Judge's conduct or condition at the January 28, 1986 hearing in which Defendant presented an hour long allocution. In between the January 28, 1986 hearing and the January 30, 1986 re-sentencing the Judge prepared the Special Verdict (as he told counsel on January 28, 1986 he would do—see Page 44 of the January 28, 1986 transcript). That Special Verdict is five typed pages. While Defendant argues that there are many things wrong with the Special Verdict, he does not argue that the mind that produced it was incompetent.

The Special Verdict is plainly logical and coherent. It articulates in an understandable manner both the Findings and Special Verdict and the reasons for the Findings and Special Verdict. Clearly and indisputably this Special Verdict and the Judgment and Sentence that followed was based on reason. The Special Verdict does specifically address Defendant's allocution; and Defendant's allocution was all that Defendant chose to present to either the probation office or the Court (except a letter from the prison) at re-sentencing.

The re-sentencing record is ready for Appellate review. There is a total absence of any colorable sanity or competency issue here.

The Petition for Post Conviction Relief is in all respects summarily DISMISSED. A.R.S. § 13–4236(C).

We are in total agreement with the trial court's observations and rulings.

10. Independent Review and Proportionality Review

 In all cases where the death penalty is imposed, this court independently reviews all matters of aggravation and mitigation to determine whether the death sentence was properly imposed. Although not required under the United States Constitution, *see Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), we have continued to conduct a proportionality review in each death penalty case. As we have already discussed in this opinion, the trial court found aggravating circumstances and our independent review confirms those findings as did our independent review of the same findings in *McCall I.*

The sentencing judge found no adequate mitigating circumstances under A.R.S. § 13–703(G) or otherwise. When considering possible mitigating circumstances, the court must consider any aspect of defendant's character or record and any circumstances of the offense relevant to determining whether the death sentence should not be imposed. *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *State v. McDaniel,* 136 Ariz. at 200, 665 P.2d at 82. In so doing, we find no reason to disagree with the sentencing court's decision in this case. We conducted a proportionality review in *McCall I* and found the death penalty to be entirely appropriate in this murder-for-hire case. We adhere to that view.

### DISPOSITION

In *McCall I,* we examined the entire record for fundamental error pursuant to

A.R.S. § 13–4035 and found none. We have now examined the supplemental record for fundamental error and find none. The convictions and sentences are affirmed. The petitions for review in the post-conviction proceedings are granted but relief is, in each instance, denied.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON, J., concur.

Justice WILLIAM A. HOLOHAN (Retired) participated in this matter but retired prior to the filing of this opinion. Justice ROBERT J. CORCORAN did not participate in the determination of this matter.