Lee Vincent MILLER,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 88–161.

Supreme Court of Wyoming.

Dec. 14, 1989.

Leonard D. Munker, State Public Defender, and Bill Rice (argued), Student Intern, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Sylvia Lee Hackl, Sr. Asst. Atty. Gen., and Howard Strand (argued), Legal Intern, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

CARDINE, Chief Justice.

Appellant, Lee Vincent Miller, seeks reversal of his conviction for aggravated assault and battery, contending that the district court erroneously admitted evidence concerning a 1983 felony conviction in Los Angeles for possession of PCP with intent to sell. Miller contends that admission of this evidence violated W.R.E. 609(a). Appellee argues that the evidence was admissible under the same rule.

We affirm.

Miller and his victim had been drinking whiskey and beer at a party when they began to argue. The victim verbally threatened Miller, punctuating his threats with racial epithets. Apparently, Miller had gained some knowledge of his victim's physical prowess by witnessing him beat up three cowboys in one night and by engaging in a public fist fight with him a few months before. Fearing a beating and concerned that his recently injured leg would prevent him from adequately defending himself, Miller stabbed his victim in the abdomen with a knife, inflicting a potentially life-threatening injury.

During the trial, the prosecutor sought to admit into evidence a variety of appellant's prior criminal convictions, primarily to contradict intimations from Miller's testimony that he was a peaceable man. The district court did not view that testimony as having placed in issue his character as a peaceable man, and it refused to admit those prior convictions. The record then becomes somewhat obscure. After defense objections to admission of the prior convictions were sustained, the prosecutor asked:

"MR. BLONIGEN: I will still be allowed to go into the other?

"MR. RAYMOND [defense counsel]: I guess while we are here, what is the extent the Court will allow him to inquire, as I understand it, have you been convicted of it.

"MR. BLONIGEN: And when.

"THE COURT: Okay."

The following cross-examination of Miller then took place, without an objection by the defense:

"Q. Mr. Miller, you previously discussed why people may have referred to you and about the name Ragsdale. Do you remember that testimony?

"A. Yes, sir.

"Q. It is also true you used the name of John Ragsdale, isn't it?

"A. I used it once.

"Q. And one of the reasons you used that name in 1983 in Los Angeles you were convicted of a felony, isn't that right?

"A. I don't recall what felony that was or what the charge was.

"Q. The charge, was it not, possession of PCP with intent to sell, was it not?

"A. Well, that was possession when they busted me, it was possession of and sales both, but it wasn't, they dropped from possession of to sell to possession.

"Q. You were subsequently convicted of the felony of selling in that?

"A. I don't know if it was a felony.

"Q. You received 36 months probation?

"A. Well, let me think, it was a little more than that, five years, but at the time I got probation I did 2 and a half years and it was becoming monotonous as far as interfering with my job, and I would have to take off my job two or three times a week and go check, and my boss was kind of getting upset, so I went to my probation officer and asked him any way I could go back to court and ask them to just give me the six months, because I couldn't do no more time myself any more time on the job, so we took it back to court and they gave me six months. I didn't have no more probation, and still had my job when I got out, but I don't know if it was a misdemeanor or a felony or not."

Appellant now asserts that the admission of this testimony violated W.R.E. 609(a), which provides in pertinent part:

"For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admit-

ted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one (1) year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant * * *."

His argument in this regard is two-fold. First, he argues that the district court erred in failing to make the requisite preliminary findings that the prior conviction was for a felony and that the probative value of the evidence outweighed its prejudicial potential. Second, he contends it was error to admit the testimony because its prejudicial effect far exceeded its negligible probative value.

■ We note that appellant's failure to make a timely objection to the introduction of this testimony requires us to affirm his conviction, absent a finding that the admission of such evidence rises to the level of plain error.

"To determine whether the plain error standard has been met, we apply a three-part test. First, this court must be able to discern unequivocally from the record what occurred at trial without resort to speculation. Second, appellant must demonstrate that what occurred constitutes a clear and obvious violation of a clear and unequivocal rule of law. Finally, that violation must have adversely affected some substantial right of appellant."

*Schwenke v. State*, 768 P.2d 1031, 1034 (Wyo.1989); *see also Britt v. State*, 752 P.2d 426, 428 (Wyo.1988). We will not find plain error in a discretionary ruling of the trial court unless the appellant demonstrates a clear abuse of that discretion by showing that the trial court could not have reasonably concluded as it did. *See Schwenke*, 768 P.2d at 1034–35; *Gresham v. State*, 708 P.2d 49, 56–57 (Wyo.1985); *Munden v. State*, 698 P.2d 621, 625–26. (Wyo.1985); *Bradley v. State*, 635 P.2d 1161, 1165 (Wyo.1981).

■ With respect to appellant's first assignment of error, we hold that the trial court's failure to make the preliminary findings required by W.R.E. 609(a) did not violate a clear and unequivocal rule of law. As we explained in *Bradley*, W.R.E. 609(a) places no burden upon the court to make such findings to support the admission of prior convictions until the defendant enters a proper objection. Only at that time does the trial court's obligation to make those preliminary determinations become clear and unequivocal. The failure to object constitutes a waiver of that obligation. *Bradley*, 635 P.2d at 1165. Appellant may not premise plain error upon the trial court's failure to make the Rule 609 findings.

■ Appellant would also have us find plain error in the admission of his prior conviction based on his contention that its prejudicial effect exceeded its probative value. However, he concedes that the balancing of prejudice against probative worth is ordinarily a discretionary matter for the trial court and that to prevail on appeal he must, as a threshold matter, clearly demonstrate the inflammatory nature of the evidence and establish that it had little probative value. Appellant has failed to carry this burden. His evidence concerning the prejudicial nature of his prior drug conviction demonstrates only the widespread public concern with, and media attention given to, illicit drug use. We rejected a similar showing as insufficient to establish the prejudicial effect of a prior conviction in *Apodaca v. State*, 627 P.2d 1023, 1027–28 (Wyo.1981), and hold likewise in this case.

Appellant has also failed to establish that the testimony elicited from him had no probative worth. During the prosecution's case in chief, testimony was given that appellant was also known as Lee Vincent Ragsdale. When appellant took the stand, he attempted to rebut the logical inference from that testimony that he employed an alias. He explained that he had been raised by a man named Ragsdale and only later in life discovered that his natural father was named Miller, a name he subsequently assumed. The prosecutor's later inquiry into appellant's use of the name John Ragsdale at the time of his prior conviction served to contradict that expla-

nation and to generally impeach appellant's credibility, suggesting that he had resorted to the deceptive practice of assuming an alias. We, therefore, hold that the admission of his testimony concerning the prior conviction did not amount to plain error.

Appellant's conviction is affirmed.

URBIGKIT, J., filed a dissenting opinion.

URBIGKIT, Justice, dissenting.

This is another case where the majority affirms the defendant's conviction when his court-appointed counsel failed to object to the introduction of arguably improper evidence. That failure to object may have allowed Miller's prior conviction for illegal drugs to determine his fate at trial at least as much as did the actual evidence relevant to the charge against him. This is also, unfortunately, another case where the basis of the holding—inadequate objection and a plain error standard of review—was briefed by neither counsel for appellate review. I dissent.

It appears improper for this court to decide according to a theory of law not briefed by the litigants, especially when that theory is again used to tidy up the prosecution's case. After "noting" the failure of Miller's counsel to make a "timely objection", the majority determined that the introduction of Miller's prior felony did not violate W.R.E. 609(a) under a plain error standard. But the failure to make a "timely objection" was not even mentioned, much less briefed, by either the prosecution or Miller.[1] Following the observed

---

1. Objection to introduction of the evidence of Miller's criminal record was made, but arguably or obviously, for whatever reason, the objection failed to include the offense which was then discussed by cross-examination of Miller following his testimony. That particular offense arguably involved drugs and a false name and when illuminated in trial, was most prejudicial. It set the stage for intimated perjury then interjected, in my opinion most improperly in rebuttal argument by the prosecution which had failed, and not Miller, to get the complainant to trial to testify. The prosecution addressed that impeachment in concluding contention:

> And how about believing Mr. Miller's statement, what can we believe out of the statement? He knows his way around the courts, we know that, he has a prior felony conviction. He had two days to listen to everybody else testify and then Mr. Brummond won't be here, to tailor his testimony. He has had that opportunity.

Objection was taken and a mistrial requested. The objection was sustained and the mistrial denied.

The sequence of events just prior to the quotation found in the majority opinion included:

> [PROSECUTING ATTORNEY]: Your Honor, may we approach the Bench?
>
> (The following proceedings were had at the Bench between Court and Counsel, out of the hearing of the Jury):
>
> [PROSECUTING ATTORNEY]: Your Honor, at this time I am making a request of the Court to be allowed to present previous convictions that occurred in '86 and '87 as well as prior felonies with a deadly weapon in '70. I believe the state of the evidence reveals the defendant has brought about the questioning of the character as opposed to that and ask to place the character for violence and fighting in question here as opposed to the victim, and I request that I be allowed to cross him on

those matters and issues that the Court has ruled out previously.

> [DEFENSE COUNSEL]: Your Honor, we oppose all three, No. 1, the rules prohibit the introduction of any felony older than ten years. No. 2, the batteries would not have involved the crime of moral turpitude, I don't believe the testimony has put peacefulness in issue, he has put the aggressive nature of the so-called victim into issue, that is law and under Rule 404 of the Wyoming Rules of Evidence, Rule 406 also talks about this kind of thing. The comment underneath that rule seems to make it clear that they intended that a defendant should be able to put the victim's aggressive nature into evidence. Mr. Miller has testified that they had a fight at the Holiday Inn where he did throw punches and he did fight. I think it would be a prejudicial thing to let those things in, and I don't bel[ie]ve that what he said or Mr. Miller has in any way said he was a peaceful man. I do not believe that rerely [sic] because you state that you acted in selfe [sic] defense that carries with it the obligation that you are putting your character for peacefulness into issue, and I would submit to the Court that it is prohibited by Rule 404. And additionally it would be prejudicial to the defendant's case.
>
> THE COURT: I didn't understand him to say that he was a peaceful person.
>
> [DISTRICT ATTORNEY]: There is testimony that he would not have used violence except for personal defense, and he would not, he put his reputation in evidence both prior violence and Rule 404(b) is once he puts his character into issue, the evidence can be received.
>
> THE COURT: It is not that clear to me that he said that. I will sustain the defense's objection.
>
> [PROSECUTING ATTORNEY]: I will still be allowed to go into the other?

insufficient trial objection, this majority requires Miller to "demonstrate that what occurred constitutes a clear and obvious violation of a clear and unequivocal rule of law" before this court would reverse under the plain error standard. This demonstration becomes the very foundation for any appellant to prevail under the plain error rule. Yet, here the majority applies a rule which requires a demonstration but provides the defendant no opportunity to make that demonstration absent opportunity for supplemental briefing before decision. It is only fair to request supplemental briefs when we suspect an issue other than those presented in the opposing briefs may control our holding. A request for a supplemental brief on an arguable issue would not be a novel request.[2] "We therefore address the *issues* regarding the jurisdiction of the Campbell County District Court as *presented pursuant to our request by the supplemental briefs of the parties." Nicholaus v. Nicholaus,* 756 P.2d 1338, 1339–40 (Wyo.1988) (emphasis added).

Besides, in all fairness, if the plain error standard should control our holding, we need to permit rebriefing for the ineffectiveness of counsel consideration. *See Murray v. State,* 776 P.2d 206 (Wyo.1989) (Urbigkit, J., dissenting); *Kallas v. State,*

776 P.2d 198 (Wyo.1989) (Urbigkit, J., dissenting); and *Amin v. State,* 774 P.2d 597 (Wyo.1989) (Urbigkit, J., dissenting).

At a minimum, we should exercise care in deciding a case on a non-briefed issue by exercising caution to assure adequate presentation by the litigants before review by this court. We need not blithely or blindly follow the current aberration observable from the United States Supreme Court by copying its unfortunate pathway taken in a number of recent occasions to rush to redefined standards of the law. This judicial aptitude is particularly illustrated by dissenting comments found in a course of cases within only one current term. In *Jett v. Dallas Independent School Dist.,* ─── U.S. ───, 109 S.Ct. 2702, 2724–25, 105 L.Ed.2d 598 (1989) (footnote omitted) (Brennan, J., dissenting), it was indicated:

> In granting certiorari in this case we did not, as the Court would have it, agree to review the question whether one may bring a suit for damages under § 1981 itself on the basis of governmental conduct.  \* \* \*  In six years of proceedings in the lower courts, including a jury trial and an appeal that produced two opinions, respondent never once suggested that Jett's only remedy was furnished by § 1983. Petitioner was. able to respond

---

[DEFENSE COUNSEL]: I guess while we are here, what is the extent the Court will allow him to inquire, as I understand it, have you been convicted of it.

[PROSECUTING ATTORNEY]: And when.

THE COURT: Okay.

The answers in cross-examination elicited by the prosecutor involved both W.R.E. 609 conviction evidence and W.R.E. 404(b) bad acts responses. The use of the alias in the drug offense was not a W.R.E. 609 inquiry. While that section clearly relates to conviction, variant definitions of bad acts under W.R.E. 404(b), "other crimes, wrongs, or acts," exist. Perhaps the most inclusive is given in *United States v. Beechum,* 582 F.2d 898, 902 n. 1 (5th Cir.1978), *cert. denied* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979), where the term extrinsic offense is used in categorization and then defined

> to denote an "offense," \* \* \* for which the defendant is not charged in the indictment that is the subject of the case sub judice.  \* \* \*
>
>  \*  \*  \*  \*  \*  \*
>
> We use the term "offense" to include "other crimes, wrongs, or acts," as set forth in Fed.R.

Evid. 404(b).  \* \* \*  Our analysis applies whenever the extrinsic activity reflects adversely on the character of the defendant, regardless whether that activity might give rise to criminal liability.

In this case, Miller got hit with a double whammy of both W.R.E. 609 and W.R.E. 404(b) in one carefully crafted sequence of cross-examination. By answers obtained, he was not just a convict—he was a dope-dealing, alias-using ex-convict.

Obviously the "victim" himself had some anxiety about testifying since he did not voluntarily appear and the State did not arrange for his involuntary attendance. Foolhardiness in continuing the injury-causing altercation might be a reason for that disinterest to later be a witness.

**2.** *See Spitzer v. Spitzer,* 777 P.2d 587 (Wyo.1989); *Stephens v. State,* 774 P.2d 60 (Wyo.1989); *United Pacific Ins. Co. v. Wyoming Excise Tax Div., Dept. of Revenue and Taxation,* 713 P.2d 217 (Wyo.1986); *State ex rel. Mortg. Guar. Ins. Corp. v. Langdon,* 671 P.2d 811 (Wyo.1983); and *Brasel & Sims Const. Co., Inc. v. State Highway Com'n of Wyoming,* 655 P.2d 265 (Wyo.1982).

to this argument only in his reply brief in this Court. While it is true that we often affirm a judgment on a ground not relied upon by the court below, we ordinarily do so only when that ground at least was raised below. * * *

It is not only unfair to decide the case on this basis, it is unwise. The question is important; to resolve it on the basis of largely one-sided briefing, without the benefit of the views of the courts below, is rash. It is also unnecessary. The Court appears to decide today (though its precise holding is less than pellucid) that liability for violations by the government of § 1981 may not be predicated on a theory of *respondeat superior*. The answer to that question would dispose of Jett's contentions. In choosing to decide, as well, whether § 1983 furnishes the exclusive remedy for violations of § 1981 by the government, the Court makes many mistakes that might have been avoided by a less impetuous course.

In *Teague v. Lane*, —— U.S. ——, 109 S.Ct. 1060, 1084, 103 L.Ed.2d 334, *reh'g denied* —— U.S. ——, 109 S.Ct. 1771, 104 L.Ed.2d 206 (1989) (Brennan, J., dissenting), it was stated:

Today a plurality of this Court, without benefit of briefing and oral argument, adopts a novel threshold test for federal review of state criminal convictions on habeas corpus. It does so without regard for—indeed, without even mentioning—our contrary decisions over the past 35 years delineating the broad scope of habeas relief. The plurality further appears oblivious to the importance we have consistently accorded the principle of *stare decisis* in nonconstitutional cases. Out of an exaggerated concern for treating similarly situated habeas petitioners the same, the plurality would for the first time preclude the federal courts from considering on collateral review a vast range of important constitutional challenges; where those challenges have merit, it would bar the vindication of personal constitutional rights and deny society a check against further violations until the same claim is presented on direct review. In my view, the plurality's "blind adherence to the principle of treating like cases alike" amounts to "letting the tail wag the dog" when it stymies the resolution of substantial and unheralded constitutional questions. *Griffin v. Kentucky*, 479 U.S. 314, 332, 107 S.Ct. 708, 718, 93 L.Ed.2d 649 (1987) (WHITE, J., dissenting). Because I cannot acquiesce in this unprecedented curtailment of the reach of the Great Writ, particularly in the absence of any discussion of these momentous changes by the parties or the lower courts, I dissent.

In *Pennsylvania v. Bruder*, 488 U.S. 9, 109 S.Ct. 205, 207, 102 L.Ed.2d 172 (1988), Justice Marshall stated in dissent:

I agree with Justice STEVENS that the Court should not disturb the decision of the court below, and accordingly I join his dissent. I write separately to note my continuing belief that it is unfair to litigants and damaging to the integrity and accuracy of this Court's decisions to reverse a decision summarily without the benefit of full briefing on the merits of the question decided.

Justice Stevens then stated in dissent:

The Court explains why it reverses the decision of the Superior Court of Pennsylvania in this drunk driving case, but it does not explain why it granted certiorari.

*Id.* 109 S.Ct. at 207. See also Justice Marshall's dissents in *Hildwin v. Florida*, —— U.S. ——, 109 S.Ct. 2055, 2057, 104 L.Ed.2d 728, *reh'g denied* —— U.S. ——, 109 S.Ct. 3268, 106 L.Ed.2d 612 (1989) and *Olden v. Kentucky*, —— U.S. ——, 109 S.Ct. 480, 484, 102 L.Ed.2d 513 (1988).

Although the California process may be more structured in written statutory criteria, the requirement and optimum goals for adequacy of appellate decision-making should not differ. The rule could be rationally stated:

"Before ... a court of appeal ... renders a decision ... based on an issue which was not proposed or briefed by any party to the proceeding, the court *shall* afford the parties an opportunity to present their views on the matter

through supplementary briefing. If the court fails to afford such an opportunity, a rehearing shall be ordered upon timely petition of any party."

*Adoption of Alexander S.*, 44 Cal.3d 857, 45 Cal.3d 207A, 245 Cal.Rptr. 1, 4, 750 P.2d 778, 782 (1988) (emphasis in original and quoting in part from a California statute). See a similar rebriefing process utilized in *State v. McCall*, 160 Ariz. 119, 770 P.2d 1165 (1989); *Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 733 P.2d 1073, *cert. denied* 484 U.S. 874, 108 S.Ct. 212, 98 L.Ed.2d 177, *reh'g denied* 484 U.S. 972, 108 S.Ct. 477, 98 L.Ed.2d 414 (1987); *Cole v. Delaware League for Planned Parenthood, Inc.*, 530 A.2d 1119 (Del.Super.1987); and *State v. Seward*, 509 So.2d 413 (La.1987).

The second reason for dissent is my continued conviction that the trier of fact should determine a defendant's fate only by the actual evidence of real events established by "the noble Anglo–American notion that we try cases rather than persons." Beaver and Marques, *A Proposal to Modify the Rule on Criminal Conviction Impeachment*, 58 Temp.L.Q. 585, 620 (1985). Because the prosecutor tried to introduce Miller's prior convictions en masse[3], little argument is needed to make good the claim that the prosecutor's *purpose*[4] was to prejudice and inflame the jury to secure Miller's conviction. That the trial judge only permitted evidence of one prior conviction does not affect the prosecutor's purpose in seeking the introduction

of the prior convictions en masse. If the jury might have thought the decision a close call after being exposed to the actual evidence of the real events, then Miller's past history could be available to tip the balance, although that history would have no relevance to his guilt or innocence to the crime for which he was on trial. This prosecutorial pattern is neither new nor fair. This follows in a course of recent developments where prejudicial non-relevance has become a formula for trial proof. See *Pena v. State*, 780 P.2d 316 (Wyo.1989) (Urbigkit, J. dissenting).

More than a century ago, Oliver Wendell Holmes, Jr., then a Justice on the Supreme Judicial Court of Massachusetts, wrote in a civil case:

"[W]hen it is proved that a witness has been convicted of a crime, the only ground for disbelieving him which such proof affords is the general readiness to do evil which the conviction may be supposed to show. It is from that general disposition alone that the jury is asked to infer a readiness to lie in the particular case, and thence that he has lied in fact. The evidence has no tendency to prove that he was mistaken, but only that he has perjured himself, and it reaches that conclusion solely through the general proposition that he is of bad character and unworthy of credit." *Gertz v. Fitchburg Railroad Co.*, 137 Mass. 77, 78 (1884).[5]

(Emphasis added.)

---

3. [PROSECUTING ATTORNEY]: Your honor, at this time I am making a request of the Court to be allowed to present previous convictions that occurred in '86 and '87 as well as prior felonies with a deadly weapon in '70.

4. W.R.E. 609—Impeachment by evidence of conviction of crime—states:

(a) General rule.—For the *purpose* of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one (1) year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

5. But see, however, Note, *Impeachment with Prior Convictions Under Federal Rule of Evidence 609(a)(1): A Plea for Balance*, 63 Wash. U.L.Q. 469, 471 (1985) (footnotes omitted and quoting *Gertz v. Fitchburg Railroad Co.*, 137 Mass. 77, 78 (1884)), which stated:

Others argue that prior convictions serve as effective impeachment devices. Justice Holmes provides the most frequently advanced rationale for admitting prior crimes into evidence. A prior conviction, Justice Holmes explained, displays a "general readiness to do evil," from which the jury may "infer a readiness to lie in a particular case." Another rationale for admitting prior convictions is that the jury has the right to know a witness' background.

This misquotation of Justice Holmes as the philosophic source of conviction impeachment

*Green v. Bock Laundry Mach. Co.,* —— U.S. ——, 109 S.Ct. 1981, 1984 n. 4, 104 L.Ed.2d 557 (1989).

It seems improper, as well as dangerous in the long run, to allow prior bad acts or previous convictions of the defendant to reduce the burdens imposed originally on government before it convicts and punishes citizens. That is my jurisprudential view. However, if this majority seeks to reduce the task imposed originally on government before citizens are punished, that reduction should at least be done openly in the light of day. The court created W.R.E. 404(b) and 609 and the court can abolish those rules with the stroke of a pen. When the exceptions to W.R.E. 404(b) can be illustrated by a lengthy footnote, *Gezzi v. State,* 780 P.2d 972, 974–76 (Wyo.1989), the rule has no meaning as a governing principle. There is enough legal fiction as it is.[6]

It is difficult and probably improvident to appropriately consider a topic as broadly emplaced in the law as the impeachment of a defendant by prior conviction when we have the kind of a record now presented and the decision of this court is made on a plain error context by appellate court decision of the adequacy of trial objection. However, the power of dicta condemns any casual acceptance at this juncture of the broad character of issues raised which belie simplistic disposition. The complexity is

not ameliorated by the current decision of the United State Supreme Court regarding a differentiated function of the rules of evidence for civil trials. *Green,* 109 S.Ct. 1981.[7]

The first difficulty advanced in this case occurs with the fact that no motion in limine was made to anchor any prior conviction to its relevancy with the crime charged to the defendant. "Generally the question of which convictions will be usable to attack credibility should be determined prior to trial." 3 Weinstein's Evidence, United States Rules § 609[05] at 609–95 (1988). The second difficulty is the inability to pinpoint whether the prior offense was considered to fall within W.R.E. 609(a)(2) dishonesty or false statement, or W.R.E. 609(a)(1) probative value outweighing the prejudicial effect. If the former is used for admissibility, the decision was erroneous as a matter of law. 3 D. Louisell and C. Mueller, Federal Evidence § 317 at 332 (1979). Conversely, if the basis is invested in the balanced test of probative value versus prejudicial effect, the decision was factually unjustified in this case and consequently, an abuse of discretion. *Id.* at § 315; *Luck v. United States,* 348 F.2d 763 (D.C.Cir.1965). No discussion is provided for this appeal regarding the W.R.E. 404(b) ingredients of the obtained and introduced

---

is not confined to the 1985 law journal. It should be noted that *Gertz,* 137 Mass. at 78 conversely determined that evidence of the previously convicted litigant's present "reputation for truth should have been admitted." Consequently, he could substantively disprove any intimation derived from the prejudice of untruthfulness derived from prior conviction. This was the ratio decidendi for reversal of conviction in the case.

6. In *Trujillo v. State,* 750 P.2d 1334, 1337 (Wyo. 1988), this court lists a five-part test to determine when alleged prior bad acts can be introduced against a defendant. One part of that test is that the evidence alleged be "plain, clear and convincing." *Id.* at 1337. Yet, in *Pena,* 780 P.2d at 318, this court reminds the public to keep in mind that "not all factors need be present to uphold a trial court's admission of evidence." In *Pena,* 780 P.2d at 318, W.R.E. 404(b) was said to "ban the use of evidence of a person's character in order to establish that the person's behavior on a particular occasion was in conformity with his character." Then shortly thereafter,

the majority permitted the testimony of seven police officers relating "a series of [prior] altercations [between Pena and the officers] in which Pena had exhibited great hostility toward the officers * * *." *Id.* at 318. That testimony was permitted because it *"suggested* that Pena was the first aggressor in the altercations with the officers." *Id.* at 319 (emphasis added). Enough said about the effectiveness of rules, such as W.R.E. 404(b) and 609, which were designed to prevent prosecutors from using innuendo and bad reputation to help do their job.

7. The philosophic infliction on justice resulting from impeachment by conviction is appropriately acknowledged by Justice Stevens in the majority opinion in *Green,* 109 S.Ct. at 1984 n. 4 and 1986 n. 11 as recognized by the quotation from Oliver Wendell Holmes in *Gertz,* 137 Mass. 77 and Dean Ladd's article, *Credibility Tests— Current Trends,* 89 U.Pa.L.Rev. 166, 191 (1940), with accompanying citations.

bad character evidence. See *Pena*, 780 P.2d 316 (Urbigkit, J., dissenting).

Clearly, the offensive foray of the prosecutor here did not achieve the territorial umbrella for a conviction within W.R.E. 609(a)(2) of crimes "involv[ing] dishonesty or false statement" by any majority application of that rule. Rationally constrained also is usage of the cross-examination impeachment where the evidence of conviction had a minimal probative factor related to the facts of this case compared to the prejudicial effect to Miller from a bad character infusion of a black man who had previously dealt in drugs.

Miller's brief realistically assays the problems presented:

It is clear that the introduction of the prior conviction evidence was procedurally deficient. It was also highly prejudicial. Miller, a black, was painted as being a California drug dealer. One would have to be deaf and blind to the national news to be unaware of the great fear that our nation's population holds for the illegal drug problem and those who participate in its distribution network.

Before this court sifts out due process versus bad acts evidence, a realistic research and proper briefing, not exacerbated by plain error intrusion, should be required. The literature and text analysis on the W.R.E. 609 subject is visually and factually extensive. The recognition of an extrinsic felony and reasoning from premise to result recognized by Justice Holmes is often discussed.[8] The topically thoughtful analysis in addition to the review in Ladd, *Credibility Tests—Current Trends*, 89 U.Pa.L.Rev. 166 (1940) can be included

in McGowan, *Impeachment of Criminal Defendants by Prior Convictions*, 1970 Law & Social Order 1 (1970); Note, *Evidence—Pennsylvania Limits Judicial Discretion on Impeachment by Prior Convictions—Commonwealth v. Randall*, 61 Temp.L.Rev. 567 (1988); Note, *Prior Conviction Impeachment in the District of Columbia: What Happened When the Courts Ran Out of Luck?*, 35 Cath.U.L. Rev. 1157 (1986); and Annotation, *Construction and Application of Rule 609(a) of the Federal Rules of Evidence Permitting Impeachment of Witness by Evidence of Prior Conviction of Crime*, 39 A.L.R. Fed. 570 (1978). *Cf.* Note, *Evidence—Diggs v. Lyons: The Use of Prior Criminal Convictions to Impeach Credibility in Civil Actions Under Rule 609(a)*, 60 Tul.L. Rev. 863 (1986) and Note, *Impeachment with Prior Convictions Under Federal Rule of Evidence 609(a)(1): A Plea for Balance*, 63 Wash.U.L.Q. 469 (1985).

The California Supreme Court, in considering the broadening parameter of admissibility created by a constitutional amendment in *People v. Castro*, 38 Cal.3d 301, 211 Cal.Rptr. 719, 726, 696 P.2d 111, 118 (1985), considered the admissibility decisions and discretional process:

What we cannot ignore, however, is the due process clause of the Fourteenth Amendment which, as interpreted by the United States Supreme Court, demands that even inferences—not just presumptions—be based on a rational connection between the fact proved and the fact to be inferred. * * * "[C]ommon-law inferences, like their statutory counterparts, must satisfy due process standards in light of present-day experience." [*Barnes v. United States*, 412 U.S. 837,

---

**8.** Statistics are variegated, but it is suggested in some of the literature that at least fourteen percent of the adult American males have been convicted of a felonious offense. With one out of eight potential witnesses or participants now falling within that category, the astronomical increase in litigative review of the use of bad acts evidence and impeachment by conviction in both civil and criminal cases can be easily understood. If the present progression continues, it should not be unexpected to find that by the turn of the century, perhaps one out of four or one out of five of all adult Americans above

the age of thirty will have been convicted of a felony. Within this generic conceptualization of trials pursued as a search for the truth, it is not quite determinable in rational belief how Oliver North's possible testimony is either more or less valid today than would have been the case one year ago. To be cruel, one could also ask what relationship to reliability of testimony is provided logically by an anticipatory or post-conviction pardon. It is still the same witness who has the same bad acts history, whether pardoned or not.

93 S.Ct. 2357, 37 L.Ed.2d 380 (1973) ] (Id. 412 U.S. at pp. 844–845, 93 S.Ct. at pp. 2362–2363.) Paraphrasing the question to be asked * * * we must ask with respect to any particular felony conviction which is offered for impeachment: "Can it be said with substantial assurance that the credibility of a witness is adversely affected by his having suffered this conviction?" If the answer is "no," impeachment is prohibited by due process: "An important element of a fair trial is that a jury consider only relevant and competent evidence bearing on the issue of guilt or innocence." (*Bruton v. United States,* (1968) 391 U.S. 123, 131, fn. 6, 88 S.Ct. 1620, 1625, fn. 6, 20 L.Ed.2d 476.)

The court further reflects "that if the felony of which the witness has been convicted does not show a 'readiness to do evil,' the fact of conviction simply will not support an inference of readiness to lie." *Id.* 211 Cal.Rptr. at 727, 696 P.2d at 119.

The California court further noted that by state law it is a felony to conspire to commit a misdemeanor and then asked "[w]hat moral turpitude follows from a conviction of conspiracy to tattoo a person under 18?" *Id.* 211 Cal.Rptr. at 727 n. 7, 696 P.2d at 119 n. 7. *Cf. Com. v. Randall,* 515 Pa. 410, 528 A.2d 1326 (1987).

Witness impeachment, not the defendant, was involved in review by the Montana Supreme Court in *State v. Shaw,* 775 P.2d 207, 208–09 (Mont.1989), but the recitation on the subject of conviction by prejudice, not by evidence, has a totality of relevance:

The record fails to disclose any appropriate reason for the State's inquiry as to the prior criminal conduct of Mr. Schoonover. Clearly it was not something inadvertent in nature, as the defendant's attorney objected to the question but was overruled by the trial court. We conclude that the intention on the part of the State was to discredit the witness by showing that he had been engaged in crimes of intimidation and assault, and that the intimidation crime involved guns. We further conclude that the aim on the part of the State was to improperly impugn the character of the defendant and thereby suggest a greater likelihood of guilt of the crimes with which he was charged. We will not tolerate this intentional and significant evasion of our rules.

We conclude that the prosecution's inquiry clearly was improper under Rule 609, M.R.Evid., and that none of the exceptions stated in Rule 404(b), M.R.Evid. applied. We hold that it was reversible error for the District Court to allow this testimony.

I would request supplemental briefing on the issues of the adequacy of objection, plain error and ineffectiveness of counsel, as well as a more comprehensive review procedurally and substantively of why this prior conviction which was presented to the jury in the cross-examination was admissible within the purview of W.R.E. 609.