453 P.2d 536

In the Matter of the Application for Writ of Habeas Corpus

STATE of Arizona, Appellee,

v.

Eddie FLOWERS, Appellant.

No. I CA–HC II.

Court of Appeals of Arizona.

April 30, 1969.

Rehearing Denied May 29, 1969.

Review Denied June 17, 1969.

 

and that he was never in Arkansas at that time in 1967.

The prosecution asked no questions of petitioner. The record contains certain exhibits and affidavits introduced at the hearing. One exhibit was from a friend of petitioner, stating that petitioner was in Dallas working on the 17th, 18th, 19th and 20th and for a few days afterward in the month of March, 1967, and that petitioner at the time stayed with a lady, Haddy Johnson, in the town of Red Oak, Texas. Another exhibit contained room rent receipts from one Haddy Johnson for the months of March 17, 1967 and April 17, 1967. One of the affidavits was of Haddy Johnson who stated that petitioner rented a house from her and lived in it with his family during the months of March and April, 1967, and that she would see him daily or every other day during this period. The other affidavits were of two persons who stated they were residents of Jefferson County, Arkansas. One said he was with petitioner on March 18, 1967 when petitioner sold some equipment to Napoleon Dorn. The other affidavit was of Napoleon Dorn who stated he bought the equipment from petitioner on that date. Neither gave the location of the transaction. Star City is shown on the map to be in Lincoln County, Arkansas.

Before the case was submitted, the court entered into the following dialogue with counsel:

"THE COURT: What papers does the State have, Mr. Hunter?

"MR. HUNTER: What papers? You mean exhibits?

"THE COURT: Do you have a warrant?

"MR. HUNTER: It's my understanding a Governor's Warrant has been issued, yes, sir.

"THE COURT: I understand, Mr. Gabusi, that for the purpose of the record that it's stipulated by you with the State that the request for extradition

Gary K. Nelson, Atty. Gen., by James S. Tegart, Asst. Atty. Gen., for appellee.

Frank Gabusi, Yuma, and Eddie Flowers, in pro. per. for appellant.

## DONOFRIO, Chief Judge.

This is an appeal from the trial court's denial of a Petition for Application for Writ of Habeas Corpus arising out of criminal extradition proceedings.

Petitioner Eddie Flowers was arrested on a charge of Grand Larceny from the State of Arkansas and placed in the Yuma County jail. In his verified petition for writ of habeas corpus, petitioner questions that the complaint issued out of the demanding state was made on affidavit or that it substantially charged an offense. His petition alleged that he was not a fugitive from justice and that he was in a state other than the demanding state at the time of the alleged offense. He further alleged unlawful detention and demanded strict proof on these issues. The Sheriff filed no response to the petition.

The record in this case is rather brief. The hearing upon which the court's order of denial was based consisted only of the testimony of petitioner, and occupied only eight pages of the transcript. He testified that he was placed in the Yuma County jail by an officer who told him he was being arrested for Grand Larceny in Star City, Arkansas, which he was supposed to have committed on March 18, 1967. Petitioner testified he had been in Star City in 1966, but that on March 17, 18 or 19, 1967, he was working in Dallas, Texas, and living in the nearby town of Red Oak, Texas,

has been issued by the Governor's office of the State of Arkansas?

"MR. GABUSI: All the information that I have received was that a Governor's Warrant had been issued by the Governor's office here in this State.

"THE COURT: And that the request was then heard by the Governor of the State of Arizona—

"MR. GABUSI: —or his deputy. I think the Deputy Attorney General.

"THE COURT: Through the Governor's office in pursuance of the statute?

"MR. GABUSI: As far as I know.

"THE COURT: After that hearing, then, the Governor approved the requisition by the State of Arkansas and issued the warrant of the Governor of the State of Arizona authorizing the removal of the—

"MR. GABUSI: Yes, sir, that's my— through telephonic conversation or talking to the Sheriff or the J.P. I was informed that these things did occur.

"MR. HUNTER: Captain Cecil Crow informed me some weeks ago that were not (sic) for the Writ which is presently pending that the man was all prepared to be turned over to the Arkansas authorities and in fact they had started on their way to pick him up and they were told to go back."

Other than this dialogue, no other evidence was introduced by stipulation or otherwise concerning the extradition papers. The legality and sufficiency of the extradition papers having been raised by the petitioner, it is necessary that we find evidence to support the court's ruling denying the writ.

As we view the court's dialogue, counsel for petitioner would only admit that he was informed there were such papers, but would make no other admission. Counsel took the position only that he was informed of the Governor's action. We believe this did not resolve the issue in any way to show

that the proceedings which led to petitioner's arrest were according to law.

■ Extradition proceedings are subject to inquiry as to their validity. Ex Parte Rubens, 73 Ariz. 101, 238 P.2d 402 (1951), cert. denied, 344 U.S. 840, 73 S.Ct. 50, 97 L.Ed. 653 (1952); Boies v. Dovico, 97 Ariz. 306, 400 P.2d 109 (1965). In this connection we are bound by the record in the case as it was presented to the trial court, unless there be records of which we can take judicial notice in the office of the Secretary of State. Applications of Oppenheimer, 95 Ariz. 292, 389 P.2d 696 (1964), cert. denied, 377 U.S. 948, 84 S.Ct. 1359, 12 L.Ed.2d 311 (1964). The vital issues as brought out in the petition were whether petitioner was in the demanding state at the time of the crime charged, and the sufficiency of the demanding papers.

The court did not have any documents before it. In particular, it did not have the Governor's Warrant on Extradition. Although there is intimation in Oppenheimer that extradition papers, in addition to a certified copy of the Governor's Warrant, are filed in the office of the Secretary of State and that we can take judicial notice of same, we are unable to learn that they exist in the instant case. We have been unable to find any statute that requires such extradition papers to be filed or kept, nor has our inquiry into what public records the Secretary of State might have in connection with this case produced anything other than that they have only a copy of the Governor's Warrant on Extradition which is transmitted to them in each case when the Secretary of State is requested by the Governor to authenticate the instrument.

■ We believe, therefore, that it would not be proper for this Court to take judicial notice of these matters that were not considered by the trial court. While a trial court may take judicial notice of certain files, we believe that in a situation where the lawfulness of the extradition is questioned as it is in this petition, it is essential the record show that the court did

in fact take such judicial notice and did in fact examine the documents or contents of the file. Lakin Cattle Company v. Engelthaler, 101 Ariz. 282, 419 P.2d 66 (1966). Under the authority of Oppenheimer, the only record of which the court could take judicial notice would be the records pertaining to the extradition actually filed in the office of the Secretary of State, which would ordinarily be a copy of the Governor's Warrant on Extradition signed by the Governor and attested to by the Secretary of State. In this particular case that warrant has not been called to our attention. Should we take judicial notice of the Governor's Warrant, this would not satisfy the question concerning the other extradition papers and the vital issue as to whether petitioner was in the demanding state at the time the crime was allegedly committed.

 The law relating to extradition is best summarized in Ex parte Rubens:

"1. 'On the presentation of a requisition for a fugitive from justice, the governor of the asylum state must determine that the person demanded is substantially charged with a crime and is a fugitive from justice'. 35 C.J.S., Extradition, § 15, page 339. The first of these considerations presents a question of law, while the second is a question of fact. (id.)

"2. The accused must be charged by indictment or information or an affidavit made before a magistrate. (id.)

"3. Before he issues his warrant, the governor must determine the jurisdictional facts but in so doing he is not required to demand proof apart from the proper requisition papers. (id.)

"4. The governor is entitled to act on a statement in an affidavit accompanying the requisition that accused is a fugitive from justice, but such affidavit is not conclusive, and may be refuted, but the burden of showing that he is not a fugitive rests on the accused. 35 C.J.S., Extradition, § 16b(3), page 344; 39 C.J.S., Habeas Corpus, § 39, page 555.

"5. The governor's warrant is not final and conclusive. Accused is entitled to bring habeas corpus. 35 C.J.S., Extradition, § 17, page 347; 39 C. J.S., Habeas Corpus, § 39, page 548. When it comes before the court on habeas corpus, the court is under the same duty to find the jurisdictional facts, viz.:

"1. That the complaint was made on an affidavit.

"2. That it substantially charges an offense.

"3. That it is made to appear that accused is a fugitive."

73 Ariz. 101 at pages 105, 106, 238 P.2d 402 at page 405.

 It is difficult to perceive how the trial court could carry out its affirmative duty of determining the requisite jurisdictional facts without having before it the documents from which the existence of such facts could be determined. The Court's statement in Rubens that "the governor's warrant is not final and conclusive" and that the trial court, on habeas corpus, "is under the same duty to find the jurisdictional facts, * * *" calls for affirmative action by the trial court.

We hold, therefore, that since the Court's decision must be based on the sufficiency of the documents upon which the Governor acted, and these documents being wanting in the record, the evidence before the trial court was insufficient upon which to base a denial of the writ. There should be a response to the writ filed and a hearing had on the issues joined.

The order denying the writ is vacated and the case is remanded to the trial court for further proceedings and hearing not

**444**

inconsistent with this opinion. If hearing is not held within thirty days of the mandate herein, the writ shall issue and the petitioner stand discharged.

STEVENS and CAMERON, JJ., concur.