947 P.2d 315

**STATE of Arizona, Appellee.**

v.

**Ronald Dwight SCHACKART, Appellant.**

**No. CR–93–0535–AP.**

Supreme Court of Arizona,
En Banc.

Oct. 30, 1997.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals, Bruce M. Ferg, Assistant Attorney General, Phoenix, for Appellee.

Ronald Dwight Schackart, Florence, In Propria Persona.

Constance L. Trecartin, Advisory Counsel, Tucson, for Appellant.

## OPINION

ZLAKET, Chief Justice.

On March 16, 1985, a jury convicted Ronald Dwight Schackart of first degree murder, kidnapping, and sexual assault. The trial court sentenced him to death for the homicide and to consecutive thirty-year prison terms on the other charges. We affirmed the convictions and non-capital sentences on direct appeal. *See State v. Schackart,* 175 Ariz. 494, 503, 858 P.2d 639, 648 (1993). Deficiencies in the record, however, required us to vacate the death sentence and remand for resentencing. Thereafter, the trial judge found two statutory aggravators, A.R.S. §§ 13–703(F)(2) (prior violent felony) and (F)(6) (especially cruel, heinous, or depraved murder). He resentenced defendant to death, and this automatic appeal followed. We have jurisdiction pursuant to Ariz. Const. art. VI, § 5(3), A.R.S. § 13–4031, and Ariz. R.Crim.P. 31.2(b).

The details of the crime are set forth in our earlier opinion and will be repeated here only as necessary. *See Schackart,* 175 Ariz. at 496–97, 858 P.2d at 641–42. Certain subsequent events, however, must be noted. The day before oral argument in this court, and six months after briefing was completed, the state requested for the first time that we take judicial notice of various documents re-

lating to defendant's prior convictions. Advisory defense counsel immediately moved to strike that request. Following argument, we denied the motion to strike and ordered the parties to file supplemental memoranda. For reasons discussed below, we now decline the state's invitation to take judicial notice.

## DISCUSSION

■ In all capital cases, this court independently reviews the record to determine the existence of aggravating and mitigating circumstances, and to decide whether the mitigation is sufficiently substantial to call for leniency. *See* A.R.S. §§ 13–703.01(A), (B); *State v. Barreras,* 181 Ariz. 516, 521, 892 P.2d 852, 857 (1995).

### I. Challenges to Aggravating Circumstances

#### A. The (F)(2) finding

At the time of this homicide, the (F)(2) aggravating circumstance required prior conviction "of a felony in the United States involving the use or threat of violence on another person." A.R.S. § 13–703(F)(2)(1989), *amended by* A.R.S. § 13–703(F)(2) (West Supp.1996). The trial court concluded that (F)(2) was established here because of defendant's previous convictions for sexual assault, kidnapping, and aggravated assault, all of which arose out of a 1984 incident involving his wife. Defendant challenges this determination.

■■ To qualify for this aggravator, the earlier felony must have been one that, *by statutory definition,* involved violence or the threat of violence. *See State v. Gillies,* 135 Ariz. 500, 511, 662 P.2d 1007, 1018 (1983). Moreover, only those crimes in which force was employed or threatened *with the intent to injure or abuse* were considered violent under the former (F)(2). *See State v. Fierro,* 166 Ariz. 539, 549, 804 P.2d 72, 82 (1990); *State v. McKinney,* 185 Ariz. 567, 582, 917 P.2d 1214, 1229 (1996).

Sexual assault and kidnapping can be perpetrated by deception as well as by force. *See* A.R.S. §§ 13–1406, –1401, –1304, –1301; *State v. Bible,* 175 Ariz. 549, 604, 858 P.2d 1152, 1207 (1993); *State v. Richmond,* 180

Ariz. 573, 578–79, 886 P.2d 1329, 1334–35 (1994). Recognizing this, the state conceded in its sentencing memorandum that these offenses would not support the (F)(2) finding.

Defendant's aggravated assault conviction was pursuant to A.R.S. § 13–1204(A)(2), which requires an assault as defined in A.R.S. § 13–1203, plus the use of a deadly weapon or dangerous instrument. There are three ways, however, to commit assault under § 13–1203:

(1) Intentionally, knowingly or *recklessly* causing any physical injury to another person;

(2) Intentionally placing another person in reasonable apprehension of imminent physical injury; or

(3) Knowingly touching another person with the intent to injure, insult, or provoke such person.

A.R.S. §§ 13–1203(A)(emphasis added). If an assault is committed recklessly pursuant to § 13–1203(A)(1), the former (F)(2) factor cannot be established because the required mental state is lacking. *See State v. Walden,* 183 Ariz. 595, 617, 905 P.2d 974, 996 (1995); *see also State v. Rogovich,* 188 Ariz. 38, 44 & n. 3, 932 P.2d 794, 800 & n. 3 (1997); *State v. McKinney,* 185 Ariz. at 583, 917 P.2d at 1230.

Here, the state failed to prove the subsection of 13–1203(A) upon which defendant's prior conviction was based. After the verdict, defense counsel waived a jury trial regarding prior convictions and stipulated to defendant's identity. The prosecution then offered a certified copy of the sentencing minute entry from the earlier case, which stated only that defendant had been found guilty of "aggravated assault, a dangerous, but nonrepetitive class three felony," without enumerating a specific subsection of 13–1203. The presentence report from that case also failed to designate any subpart of the assault statute. Before defendant's resentencing, the state submitted a memorandum with copies of the earlier indictments attached. Again, those documents did not indicate any specific subsection of 13–1203. Nevertheless, the trial court found a prior felony involving the use or threat of violence.

■ Apparently concerned that the (F)(2) factor might be overturned on appeal, the state filed a "Request to Take Judicial Notice," asserting that "in order for this Court to intelligently resolve the dispute, it must have proof before it of the materials demonstrating the precise nature of the prior convictions, but those materials are not currently part of the Record on Appeal in this case." We are thus asked to "notice" various documents, including portions of jury instructions allegedly given in the prior matter. *See Walden,* 183 Ariz. at 617, 905 P.2d at 996. The instructions state that the crime of aggravated assault requires proof of the following: "1. That the Defendant intentionally put another person in reasonable apprehension of immediate physical injury; and 2. That the Defendant used a deadly weapon such as a firearm." Therefore, they would seem to indicate that defendant's prior conviction was based on § 13–1203(A)(2). As mentioned above, however, these instructions were not introduced at defendant's initial sentencing, nor at his resentencing.

Arizona cases do not provide a clear standard for determining when an appellate court may take judicial notice of matters that were never presented to the trial judge. *See Kriz v. Buckeye Petroleum Co.,* 145 Ariz. 374, 377 n. 3, 701 P.2d 1182, 1185 n. 3 (1985) (holding judicial notice of federal court memorandum decision improper under Rule 201, Ariz. R.Evid.); *In re Estate of Henry,* 6 Ariz.App. 183, 188, 430 P.2d 937, 942 (1967) (refusing to take judicial notice of legal proceedings transacted in another court); *cf. State ex rel. Corbin v. Tocco,* 173 Ariz. 587, 590 n. 1, 845 P.2d 513, 516 n. 1 (App.1992) (court of appeals may take notice of records in the same case that were previously submitted to it and were properly before the trial court). *But see State v. Valenzuela,* 109 Ariz. 109, 110, 506 P.2d 240, 241 (1973); Morris K. Udall et al., *Arizona Practice, Law of Evidence* § 152, at 331 (3d ed. 1991) ("Supreme Court will take judicial notice of its own records and decisions and those of superior courts.").

■ Because our court does not act as a fact-finder, we generally do not consider materials that are outside the record on appeal.

*See Schaefer v. Murphey,* 131 Ariz. 295, 299, 640 P.2d 857, 861 (1982); *GM Dev. Corp. v. Community Am. Mortgage Corp.,* 165 Ariz. 1, 4, 795 P.2d 827, 830 (App.1990); *Benitez v. Indus. Comm'n of Arizona,* 15 Ariz.App. 54, 55, 485 P.2d 1171, 1172 (1971) (refusing items filed on the day of oral argument). Were we inclined to consider the late-presented documents in this case, we would first have to satisfy ourselves as to their authenticity, since we have been provided only photocopies of pages purportedly taken from various proceedings. *See* Ariz.R.Evid. 902; *State v. Flowers,* 9 Ariz.App. 440, 442–43, 453 P.2d 536, 538–39 (1969) (trial court must examine file of extradition papers before taking judicial notice of them). This court, however, is ill-equipped to resolve disputes over authenticity. Thus, the customary way to prove a prior offense is by introducing appropriate documentary evidence in the trial court. *See State v. Marlow,* 163 Ariz. 65, 70, 786 P.2d 395, 400 (1989). We see no reason to depart from this procedure, especially where life or death might literally hang in the balance. Regardless of the extent to which judicial notice may be appropriate in other contexts, therefore, we are not persuaded that it should be used at the appellate level to establish the existence of aggravating factors in a capital case. We hold that the (F)(2) finding is unsupported.

■ The state has alternatively urged us to apply the current version of § 13–703(F)(2), amended prior to defendant's resentencing to encompass specifically enumerated "serious offenses." *See* A.R.S. §§ 13–703(F)(2), (H). We believe the *ex post facto* clauses of the United States and Arizona Constitutions prohibit this. *See* U.S. Const. art. I, § 9, cl. 3; Ariz. Const. art. 2, § 25. The change in the statutory provision was substantive and could plainly serve to disadvantage a defendant. Offenses that did not qualify as an aggravating circumstance under the former "use or threat of violence" standard are now listed as serious felonies. *See State v. Correll,* 148 Ariz. 468, 481, 715 P.2d 721, 735 (1986) (citations omitted) (reaching similar result for new (F)(8) factor); A.R.S. § 13–703(H)(2); *Richmond,* 180 Ariz. at 579, 886 P.2d at 1335 (kidnapping); *State v. Hen-*

ry, 176 Ariz. 569, 586, 863 P.2d 861, 878 (1993) (manslaughter); *Bible*, 175 Ariz. at 604, 858 P.2d at 1207 (sexual assault).

## B. The (F)(6) finding

■ Defendant complains that the judge's finding under § 13–703(F)(6) is "virtually incoherent" because he did not separately discuss cruelty, heinousness, and depravity. He did, however, list at least eleven specific factual findings supporting this aggravating factor, all of which are sufficiently clear for our review. *See State v. Knapp*, 114 Ariz. 531, 542–43, 562 P.2d 704, 715–16 (1977). Moreover, "[t]he especially heinous, cruel or depraved circumstance is phrased in the disjunctive, so if any one of the three factors is found, the circumstance is satisfied." *State v. Murray*, 184 Ariz. 9, 37, 906 P.2d 542, 570 (1995).

### 1. Cruelty

■ A murder is especially cruel when the perpetrator inflicts mental anguish or physical abuse before the victim's death. *See State v. Walton*, 159 Ariz. 571, 586, 769 P.2d 1017, 1032 (1989). Mental anguish can result when the victim experiences significant uncertainty about his or her ultimate fate. *See Murray*, 184 Ariz. at 37, 906 P.2d at 570. "If the evidence is inconclusive as to whether the victim was conscious during the infliction of violence, the court cannot find that the killing was especially cruel." *State v. Bolton*, 182 Ariz. 290, 311, 896 P.2d 830, 851 (1995). Defendant maintains that the victim here did not have time to suffer during the killing, that there were no significant injuries unrelated to the strangulation itself, and that he could not "reasonably foresee the victim's suffering prior to her death," having intended only to render her temporarily unconscious.

On the day of the murder, defendant met Charla Regan for lunch on the University of Arizona campus. He was allegedly distraught about recent events in his life and needed a temporary place to stay. Out of friendship, Charla helped him find a motel and was willing to discuss his problems. They arrived at the room shortly before 1:00 p.m. The primary source of information for the events that transpired during the rest of the afternoon is defendant's statement to police. According to him, they talked about the pending assault charges involving his wife, and his plan to flee to California. At some point, he took a gun from his bag and told Charla he wanted to have sex with her. She refused, and when he could not change her mind, he removed her clothes and forced himself on her. Afterwards, defendant claims Charla fell asleep on the bed. Later, when she was briefly awake, he mentioned the possibility of tying her up or giving her sleeping pills to facilitate his escape. After contemplating his options, defendant abruptly hit Charla on the jaw with the butt of his gun, breaking her tooth. He allegedly did this to render her temporarily unconscious while he made his escape. However, she began screaming, at which point he became frightened and strangled her. This last act occurred between 5:00 and 6:00 p.m.

■ At trial, the medical examiner testified that a strangling victim would probably remain conscious for "a minute or two" after the choking began. This court has held that a period of suffering from eighteen seconds to two or three minutes can be enough to warrant application of the cruelty aggravator. *See State v. Herrera*, 176 Ariz. 21, 34, 859 P.2d 131, 144 (1993). Proper analysis requires us to examine the totality of circumstances surrounding the murder and not just the final act that killed the victim. *See State v. Lavers*, 168 Ariz. 376, 393, 814 P.2d 333, 350 (1991). Although we are unwilling to say that all stranglings are per se cruel, or that all killings involving a sexual assault automatically qualify under (F)(6), we are persuaded that the cruelty finding was appropriate under the present facts. The events of this tragic afternoon were sufficiently connected to be considered one "transaction." The length of time Charla was held in the motel room, the presence of a gun, the sexual assault, the discussion about tying her up or drugging her, the blow to her head, the strangling, and her inevitable uncertainty about her ultimate fate all support the court's finding that this murder was especially cruel.

## 2. Heinous or depraved

■ The trial judge's statements imply that the murder also satisfied the remaining elements of § 13–703(F)(6). The terms "heinous" and "depraved" focus on the defendant's state of mind at the time of the offense. *See State v. Amaya–Ruiz,* 166 Ariz. 152, 178, 800 P.2d 1260, 1286 (1990). An especially heinous murder is "hatefully or shockingly evil," while a depraved one is "marked by debasement, corruption, perversion or deterioration." *Id.* In *State v. Gretzler,* this court listed the factors to be considered in determining whether a murder was especially heinous or depraved: (1) relishing; (2) gratuitous violence; (3) mutilation; (4) senselessness; and (5) helplessness. 135 Ariz. 42, 51–52, 659 P.2d 1, 10–11 (1983). Witness elimination may also be of significance under some circumstances. *See State v. Ross,* 180 Ariz. 598, 606–07, 886 P.2d 1354, 1362–63 (1994).

■ The trial judge apparently found that defendant relished the murder. He stated at sentencing, "[D]uring that strangulation and prior to death, according to the pathologist, hundreds of small hemorrhages appeared in the victim's eyes and on her face as blood vessels burst.... With both hands on her neck and the victim face up you ... must have watched those hemorrhages appear." Defendant contends, however, that he could not have seen this because the victim was lying on her stomach, the lights in the motel room were off, and it was nearly dark outside. Police found Charla lying on her back, but defendant claims that he turned her over after he strangled her. The medical examiner testified to the extent and cause of the hemorrhages, but never addressed when they might have appeared or the victim's position at that time. The tooth chip was found in the bed sheets, perhaps lending support to defendant's contention that Charla was lying face down when he strangled her. With nothing more in the record, we cannot say that defendant ever saw, much less relished, the hemorrhages as he strangled the victim.

According to the state, the court's finding that the murder was "a selfish act designed to demonstrate the defendant's power and domination over her and simultaneously degrade her" shows that defendant had a depraved mind. It cites *State v. Martinez–Villareal,* where the perpetrator bragged that he had killed two people "because of his pure balls, that he was very macho." 145 Ariz. 441, 444, 451, 702 P.2d 670, 673, 680 (1985). The "horrific form of ego gratification" exhibited in that case, however, stands in contrast to the behavior of this defendant, who turned himself in to police shortly after the crime and, as far as the record shows, never boasted in any way about the murder. Thus, we do not find relishing.

■ The trial court also stated that defendant "inflicted unnecessary and gratuitous violence upon the victim," but this finding is similarly unsupported by the evidence. The medical examiner admitted that the majority of injuries in the neck and facial area were associated with the strangulation, and the others were not inconsistent with this type of death. Apart from the victim's broken tooth and lacerated tongue, there were no signs of violence beyond the strangling. We do not believe a single blow that chips a tooth qualifies as gratuitous violence. *See, e.g., State v. Scott,* 177 Ariz. 131, 143, 865 P.2d 792, 804 (1993) (one or two unnecessary gunshot wounds, either of which may have been fatal, do not establish gratuitous violence). The tongue lacerations were apparently caused by defendant stuffing a sock in the victim's throat. He claims this occurred when he heard her make a sound after the strangulation. In any event, our cases have required more definitive proof of additional, severe brutality to establish gratuitous violence. *See, e.g., State v. Hyde,* 186 Ariz. 252, 280–81, 921 P.2d 655, 683–84 (1996)(bludgeoning continued after victims were dead with skulls shattered from repeated blows with knife); *State v. Walden,* 183 Ariz. 595, 619, 905 P.2d 974, 998 (1995)(bruises on victim's legs and arms, scraping or cutting injuries to neck, chest, and breast, head wound, strangulation, and deep slashes to throat demonstrated defendant's attempt to inflict violence beyond that required to kill), *cert. denied,* —— U.S. ——, 116 S.Ct. 1444, 134 L.Ed.2d 564 (1996); *State v. Villafuerte,* 142 Ariz. 323, 331, 690 P.2d 42, 50 (1984) (victim was "perversely"

gagged to a much greater extent than necessary, with ball of cloth placed in nasal pharynx); cf. Richmond, 180 Ariz. at 579, 886 P.2d at 1335 (gratuitous violence not established where defendant twice drove over unconscious victim with car).

■ The trial judge did not find mutilation. He stated, however, that the killing was "totally needless and unnecessary" (senselessness) and that the "sole unequivocal reason" for defendant's actions was "to prevent the victim from informing the police and from being a witness against you" (witness elimination). At the time of resentencing, State v. Ross, which limits a finding of witness elimination to three categories, had not yet been decided. 180 Ariz. at 606, 886 P.2d at 1362. Under Ross, this element may be considered only where: 1) the victim was a witness to some other crime and is killed to prevent him or her from testifying about it; 2) the perpetrator states that witness elimination was a motive for the murder; or 3) extraordinary circumstances, present in only the most extreme cases, demonstrate such a motive. Id. Here, the evidence does not support any of these categories beyond a reasonable doubt.

■ Senselessness and helplessness, without more, are ordinarily insufficient to prove heinousness or depravity. See, e.g., State v. Hyde, 186 Ariz. 252, 281, 921 P.2d 655, 684 (1996); State v. Miles, 186 Ariz. 10, 18, 918 P.2d 1028, 1036 (1996); State v. Johnson, 147 Ariz. 395, 401, 710 P.2d 1050, 1056 (1985). We are thus left without adequate evidence to establish these components of (F)(6).

■ The state asks us to consider "additional factors," most notably that the victim was not a stranger but someone who had befriended defendant and tried to help him during a difficult time. A few cases have mentioned the relationship between a defendant and a victim when evaluating aggravation, however (F)(6) has only been established where there was significantly more proof of gratuitous violence. See State v. Wallace, 151 Ariz. 362, 367–68, 728 P.2d 232, 237–38 (1986); State v. Fisher, 141 Ariz. 227, 252, 686 P.2d 750, 775 (1984). We refuse to find this circumstance based solely on the relationship between defendant and the victim. To do so would expand the meaning of "heinous and depraved," thereby instituting "a regime of ad hoc sentencing, destroying the definitional consistency [and constitutionality] of our sentencing process." See State v. Barreras, 181 Ariz. 516, 523, 892 P.2d 852, 859 (1995).

### C. Improper criteria allegedly used to impose death

■ Defendant argues that the court applied its own nonstatutory factors such as "moral outrage," and improperly used him as "a vehicle to promote social control." For a capital sentencing scheme to pass constitutional scrutiny, "discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." State v. Mata, 185 Ariz. 319, 323, 916 P.2d 1035, 1039 (1996)(quoting Gregg v. Georgia, 428 U.S. 153, 189, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976)). The trial court can give weight only to evidence that tends to establish an aggravating circumstance enumerated in A.R.S. § 13–703(F). See State v. Gulbrandson, 184 Ariz. 46, 66, 906 P.2d 579, 599 (1995).

■ There is nothing here to indicate that the sentencing judge overstepped these boundaries. After discussing at length the aggravating circumstances as well as the defense's proffered mitigation, the judge characterized capital punishment as "an expression of the moral outrage of our society at a particular horrible and offensive conduct." He also mentioned deterrence as a goal of our criminal justice system in general and of capital punishment in particular. Absent evidence to the contrary, we assume the judge was capable of focusing on relevant factors and of setting aside irrelevant and emotional ones. See State v. Bolton, 182 Ariz. 290, 316, 896 P.2d 830, 856 (1995). The above remarks do not demonstrate that the court abandoned constitutional mandates and sentenced defendant "under its own beliefs."

### D. Remand for resentencing urged

Defendant argues that if any portion of (F)(2) or (F)(6) was improperly found, his

case must be remanded for another sentencing. He asserts that *State v. Bible* requires remand in light of the "significant mitigation" presented here. 175 Ariz. 549, 608, 858 P.2d 1152, 1211 (1993). He also characterizes as unconstitutional A.R.S. § 13–703.01, requiring our court to conduct the reweighing itself unless evidence was erroneously precluded or the record is deficient.

We have today stricken the (F)(2) finding as well as the heinous and depraved prongs of (F)(6). Although reweighing is necessary, we do not agree that *Bible* requires a remand of this matter. Contrary to defendant's assertion, the mitigation here is of limited significance. Therefore, our refusal to remand is not based on § 13–703.01, and we need not address the argument that the statute is unconstitutional.

## II. Challenges Involving Mitigation Evidence

### A. Alleged failure to properly consider evidence under A.R.S.§§ 13–703(G)(1),(2), and (4)

Defendant challenges the court's finding that his capacity to know right from wrong and to assess wrongful conduct was not seriously impaired. He cites his previous treatment at the Southern Arizona Mental Health Center and psychiatric testimony that he acted impulsively in strangling the victim. He further claims that he was under the influence of alcohol after having consumed three beers prior to the murder.

Dr. Otto Bendheim, the defense psychiatrist, reported that defendant was raised in a disturbed home by a mother who was mentally ill and a father with a deviant personality. The doctor testified that defendant was "more likely to act impulsively than most other people," and when angered "would not act violent, but usually he tried to keep it all within and then would explode at an inopportune moment." His diagnosis, however, falls short of the significant impairment required by (G)(1). As described in his written report:

[I]t is quite obvious that we are dealing with an acute emotional disturbance in a person, who was extremely vulnerable toward that sort of thing. His pre-existing feeling of inadequacy and his more recent extreme anger [over his wife], frustration and conviction of having been dealt unjustly culminated in an act of tremendous violence, with disastrous results.

Other evidence refutes defendant's claimed impairment. For instance, he contends that while in the motel he had periods during which he mistook the victim for his estranged wife. Dr. Bendheim's report, however, indicates that "a dissociative reaction, coming and going in rapid succession, is not a very convincing story." The psychiatrist further opined that defendant knew right from wrong and was aware that he was committing a wrongful act. The state's psychiatrist, Dr. Cleary, found no indication of any mental illness or disorder that would have rendered defendant "unable to perceive the nature and quality of his acts or unable to distinguish right from wrong in a legal sense."

As far as intoxication is concerned, police testimony confirmed that three beer cans were found in the motel room. However, even if defendant was "buzzed" from the beer, this cannot constitute (G)(1) mitigation without evidence that he was too intoxicated to conform his conduct to the requirements of the law or to appreciate its wrongfulness. *See State v. Gallegos*, 178 Ariz. 1, 17, 870 P.2d 1097, 1113 (1994). The record is devoid of such evidence.

The judge considered defendant's claim of impairment and questioned Dr. Bendheim at the aggravation/mitigation hearing. He then clearly rejected the first prong of § 13–703(G)(1) (significantly impaired capacity to appreciate wrongfulness of conduct). Defendant suggests, however, that the second prong (significantly impaired capacity to conform conduct to law) was found, but the court's language indicates otherwise. The judge stated, "[T]he Court has taken into consideration that you are more impulsive than the average person and that your capacity to conform your conduct to the requirements of the law was *to some extent* impaired." (Emphasis added.) This does not comport with the statutory requirement of *significant impairment*. *See* A.R.S. § 13–

703(G)(1). At any rate, in our independent review we do not find either aspect of (G)(1).

Defendant further asserts that the court only weighed this evidence against the (F)(2) aggravating circumstance. At sentencing, however, the judge said he "reviewed ... all of the matters proffered to the Court in mitigation. I have weighed those factors, the evidence supporting them and their significance vis-a-vis the two statutory aggravating factors proved beyond a reasonable doubt...." Thus, it appears that he properly viewed the evidence in light of all the aggravation.

We also find no proof of the (G)(2) factor (perpetrator was under unusual and substantial duress) in the record. The court found that defendant was "under substantial stress but not under duress." We agree that his stress, stemming from the breakup of his marriage and the termination of his college and military careers, is entitled to some *non-statutory* mitigating weight.

The court rejected the (G)(4) factor (grave risk of death not reasonably foreseeable). According to the verdict form, the jury found intent to kill. This was supported by testimony regarding the victim's extensive hemorrhages and contusions (indicating that a great deal of force was used), and the time required for death to occur. The evidence also strongly suggested that defendant must have continued to strangle the victim for several minutes after she lost consciousness, despite his claim that he merely wanted to prevent her from calling the police. The judge concurred with the jury and rejected Dr. Bendheim's opinion that defendant lacked intent to kill. We do not disagree, nor can we accept defendant's contention that the risk of this woman's death was unforeseeable.

The court found defendant's age of twenty-one years at the time of the offense to qualify under § 13–703(G)(5), and we concur.

No other statutory mitigators were alleged, and our independent review yields none.

## B. Alleged failure to consider nonstatutory mitigation

Defendant contends that once the judge found the evidence insufficient to meet the (G)(1) or (G)(4) criteria, he erroneously failed to consider it as nonstatutory mitigation. If a trial court finds that impairment does not rise to the level of statutory mitigation, it "must consider the offered evidence further to determine whether it in some other way suggests the defendant should be treated with leniency." *State v. Fierro,* 166 Ariz. 539, 553, 804 P.2d 72, 86 (1990) (citation omitted). The transcript shows that the judge followed this mandate. Although he did not specifically discuss each piece of evidence first as statutory and then as nonstatutory mitigation, he clearly considered it all, even that which did not qualify under any subsection of 13–703(G). For example, although (G)(1) was not met, the court concluded that the defendant was "more impulsive than the average person," was "to some extent impaired," and was under "substantial stress" at the time of the offense.

## C. Alleged failure to consider other nonstatutory mitigation

Defendant argues that the trial court refused to consider his good conduct during incarceration. He has also referred us to testimony about his good military record, apparently as some evidence of his ability to do well in a structured environment. For reasons discussed in Part II(B), we believe that the court examined the materials submitted but found them unpersuasive.

Claims of in-custody good behavior are subject to close scrutiny. *See State v. Lopez,* 175 Ariz. 407, 416, 857 P.2d 1261, 1270 (1993). Although defendant received positive work evaluations and acted as a law clerk in the library, he was no model prisoner. The presentence report discloses that he was placed on facility probation for secreting a razor blade in his cell. He was also the subject of prison disciplinary actions for disobeying an order and destroying property. Amidst his good work evaluations are some with ratings of "average" or even "poor" and comments such as "very moody," "needs to work on cooperation with staff," and "has

shown a lack of judgment and responsibility through his actions in the library." Finally, defendant's military record is tarnished by an attempt to make himself sick in order to obtain a medical discharge. In our judgment, therefore, his conduct was entitled to little if any mitigating weight, even considering the additional affidavits submitted three weeks after sentencing.

■ Defendant further argues that his remorse should mitigate the sentence. Immediately after the murder, he went to his pastor's home and reported that he had strangled someone. The defendant then drove both of them to his parents' house where he phoned the police and turned himself in. At trial, the pastor testified that when defendant appeared at his doorstep he "showed a lot of anguish and pain" but was not crying. The witness had no concerns about defendant's nerves being too unsteady to drive. Dr. Bendheim testified that defendant told him he wished to die, later explaining that "[r]emorse ... is present, but the decision to possibly seek death was not based mainly on remorse."

The trial court expressly addressed this issue and found:

> Your entire manner and demeanor before, during and since this trial, your treatment of this process as merely some new intellectual game leads this Court to the conclusion that your only familiarity with remorse is the spelling and pronunciation of the word. You wrote to me, "the knowledge that Charlie is forever gone from this plane of existence is made especially painful by the fact that her life literally passed through my hands."
>
> You may think that to have been a clever turn of phrase; I find that it is a snide word game describing a foul murder perpetrated by you. It speaks volumes not of remorse or of respect for Ms. Regan, but of a mind so supercilious and full of self that it believes it is permissible to be cute about this crime. It says that you committed these crimes with a depraved mind and a malignant heart.

■ Where the trial judge disbelieves a defendant's statements claiming remorse, the circumstance is generally not established. *See State v. James,* 141 Ariz. 141, 148, 685 P.2d 1293, 1300 (1984). We agree that evidence of true remorse is lacking in this record.

■ Defendant submits that his cooperation with police constitutes mitigation. We note, however, that although he spoke with officers immediately after the murder, he later retracted those portions of his statement in which he admitted the sexual assault. This would seem to minimize the positive effect of any cooperation.

Defendant also asserts that recent traumatic events, coupled with his childhood, family, and emotional problems, impacted the ability to control his impulsiveness. As discussed in Part II(C), the court addressed these aspects of defendant's character and gave them some weight as nonstatutory mitigation. We agree with the findings.

Next, defendant argues that "substantial residual doubts" about his guilt should be considered in mitigation. He asserts that his confession was given involuntarily and in violation of *Miranda, see Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that no independent evidence corroborated a sexual assault. He challenges the admissibility of some of the state's evidence and complains that the required elements of kidnapping were not proven.

■ Once a person is found guilty beyond a reasonable doubt, unsupported claims of innocence do not constitute mitigation for sentencing purposes. *See State v. Amaya–Ruiz,* 166 Ariz. 152, 179, 800 P.2d 1260, 1287 (1990) (citations omitted). There was ample support for the jury verdict. Defendant's confession to the assault was bolstered by physical evidence at the scene. The proof of kidnapping included the extended length of time defendant kept the victim in the motel room. With the exception of the involuntariness claim, which we decided against him, defendant did not raise these issues on his first appeal. In affirming his convictions, however, we conducted a fundamental error review and found none. *See State v. Schackart,* 175 Ariz. 494, 503, 858 P.2d 639, 648 (1993). Defendant's claims of

doubt regarding his guilt are implausible and do not constitute mitigation. *See State v. Atwood,* 171 Ariz. 576, 653, 832 P.2d 593, 670 (1992).

 Finally, the trial court considered defendant's lack of contact with the criminal justice system, at least until the assault on his wife. It also credited his positive activities as a youth. We agree that defendant's early years exhibited promise, shown in part by his high school participation in writing and speaking programs, internships, and other community activities, as well as his enrollment at a university. We accord some mitigating weight to these elements.

## III. Defects Allegedly Requiring New Aggravation/Mitigation Hearing

### A. Failure to hold mitigation hearing

Defendant argues that the trial court erred in failing to conduct a new aggravation/mitigation hearing on remand, thereby depriving him of the right to present evidence prior to sentencing. In denying defendant's motion, the judge relied on our prior opinion, in which we stated that "the trial court need not repeat the aggravation/mitigation hearing." *State v. Schackart,* 175 Ariz. 494, 499, 858 P.2d 639, 644 (1993). He nevertheless advised defense counsel that they could submit "any material or in the way, say, of an offer of proof with respect to mitigating factors so that your record will be complete." He further explained that this "offer of proof" could include an affidavit regarding who the witnesses would be and what they would say.

Two weeks later, when counsel asked for a clarification of what the offer could contain, the judge replied,

> The only thing I can think of just offhand that would be relevant is what happened between 1985 and now. That's essentially his DOC record and what he's been doing for the last nine years.
>
> . . .
>
> I'm just—*you get an opportunity to take a shot, essentially what amounts to another shot.* ... if I were you, I would just go ahead and get it done, because *I'm going to take a look at whatever you file.*

(Emphasis added.) Despite repeated assurances to the court that an offer of proof was being prepared, the lawyers never submitted such a pleading. They did, however, file an affidavit from defendant's mother concerning his family background, which was sealed at his request. Defendant also tendered work evaluations regarding his prison jobs.

 A trial court must consider all possible mitigation in determining whether to impose a death sentence. *See, e.g., State v. McCall,* 160 Ariz. 119, 131, 770 P.2d 1165, 1177 (1989). Such consideration is demonstrably present in this record. Defendant had a complete aggravation/mitigation hearing prior to his first sentencing. The transcript of that earlier proceeding, presided over by the same judge, was available for review at the time of resentencing, and is before us now. *See Schackart,* 175 Ariz. at 499, 858 P.2d at 644. In addition, the court gave the defense an opportunity to submit further materials. The record reflects that everything offered was taken into account by the judge in his resentencing determination. We have independently reviewed this material, together with those items that have been subsequently added to the record by the defense. We are unable to agree that defendant has been deprived of the ability or opportunity to present relevant proof in mitigation.

### B. Adequacy of resentencing order

 Defendant claims that the resentencing order does not provide for meaningful review because the court "mechanically repeated its 1985 ruling without reflection." We disagree. While the trial judge restated findings from the first sentencing, those clearly concerned facts that had not changed in the interim. The resentencing order adequately lays out the court's considerations for our review.

### C. Refusal to grant continuance

 Defendant asserts that the denial of his motion for a postponement of sentencing deprived him of the ability to develop several potential sources of mitigation. We review this decision only for a clear abuse of discre-

tion. *See State v. Amaya–Ruiz,* 166 Ariz. 152, 164, 800 P.2d 1260, 1272 (1990).

██ A brief summary of relevant dates is necessary. This court's opinion remanding the matter for resentencing was issued on July 22, 1993. The Pima County Legal Defender's Office was appointed to represent defendant on August 19. Resentencing was scheduled for October 4, but the parties stipulated to continue that date to November 8. On October 22, the judge denied defendant's motion for a new mitigation hearing. Thereafter, sentencing was rescheduled to December 7. Citing heavy caseloads and the voluminous file in this matter, defense counsel moved on December 2 for another postponement, or in the alternative for an additional ninety days to prepare an offer of proof. Those requests were denied. At the resentencing, counsel again asked for a mitigation hearing and a continuance. The court went ahead with the proceeding, informing the attorneys that they could submit further materials in the nature of an offer of proof any time within the twenty-day period for filing an appeal. Their submission on December 27 included brief statements from prison officials and a letter from a psychologist.

Notwithstanding any preparation defendant may have done while representing himself on appeal, his lawyers had three and a half months from appointment to resentencing, the benefit of a complete record on appeal, and information from the first mitigation hearing. Dr. Bendheim had not only prepared a written report, but had also testified extensively at trial and at that earlier hearing. No attempt has been made to explain why counsel did not have time to adequately research and prepare the single issue of mitigation. We find no abuse of discretion.

Defendant also fails to demonstrate any prejudice from denial of the continuance. *See Amaya–Ruiz,* 166 Ariz. at 164, 800 P.2d at 1272. The avenues of mitigation he allegedly wished to pursue included further exploration into his psychological history and family background, reevaluations of his mental state at and since the time of the crime, and changes in his attitudes about rehabilitation and remorse. The trial court, however, had already heard testimony about defendant's difficult childhood and family problems from several witnesses including Dr. Bendheim, whose report was in the record. Defendant had also submitted an affidavit from his mother detailing many of these issues. Further opinions would have provided at most additional interpretations of defendant's emotional difficulties, which existed and were known before the first sentencing. *See State v. Clabourne,* 142 Ariz. 335, 342–43, 690 P.2d 54, 61–62 (1984). As for evidence of changed behavior since the offense, the court possessed his prison records, and we now have the benefit of the additional affidavits submitted after the resentencing.

### D. Defendant absent at allegedly critical stages

Defendant argues that his absence from five hearings, three of which occurred before or during the trial, and two of which took place prior to resentencing, violated his constitutional right to attend all critical stages of the proceedings.

██ An accused's presence at trial is protected by the Sixth and Fourteenth Amendments to the United States Constitution and by article II, section 24 of the Arizona Constitution. *See State v. Levato,* 186 Ariz. 441, 443, 924 P.2d 445, 447 (1996) (citing cases). We have adopted the view that a defendant also has the right to attend those proceedings where "his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *State v. Christensen,* 129 Ariz. 32, 38, 628 P.2d 580, 586 (1981) (citation omitted); *Levato,* 186 Ariz. at 443, 924 P.2d at 447.

██ The first three occasions about which defendant complains were not raised in his first appeal, and are therefore waived. *See State v. Youngblood,* 173 Ariz. 502, 505, 844 P.2d 1152, 1155 (1993). The last two occurred on August 30, 1993, when the trial court set the resentencing date, and on October 22, when it considered the defense motion for a mitigation hearing. We do not perceive that defendant's opportunity to defend himself was in any way impaired by his

absence from either proceeding. The scheduling of a sentencing date was a mere housekeeping matter during which no argument was heard, no other issues were addressed, and defendant could have contributed nothing. At the other proceeding, defense counsel thoroughly argued the motion for a mitigation hearing and defendant has not shown that his presence would have made any difference. *See State v. Hooper,* 145 Ariz. 538, 545, 703 P.2d 482, 489 (1985) (no right to be present when judge entered order allowing witnesses to speak with special prosecutor); *State v. Pawley,* 123 Ariz. 387, 390, 599 P.2d 840, 843 (App.1979) (proper for judge to communicate with attorneys in defendant's absence regarding jurors' questions).

In light of the foregoing, we need not determine whether defendant's presence was waived at these hearings. *See, e.g., Amaya–Ruiz,* 166 Ariz. at 175, 800 P.2d at 1283 (defendant waived attendance at aggravation/mitigation hearing); *State v. Collins,* 133 Ariz. 20, 23, 648 P.2d 135, 138 (App.1982) (counsel may waive defendant's right to be present during exercise of peremptory strikes). According to the minute entries, however, defense counsel agreed that the presence of their client was unnecessary.

◼ Finally, contrary to defendant's suggestion, Rule 26.9 ("The defendant is entitled to be present at a pre-sentencing hearing and shall be present at sentencing ....") is inapplicable to the proceedings in question. *See* Ariz.R.Crim.P. 26.7 through 26.9.

### E. Trial judge's claimed bias

◼ Defendant refers to a series of statements and actions by the judge that allegedly demonstrated a bias against him and in favor of the death penalty. He first takes exception to several of the court's comments at resentencing. He complains that the judge improperly considered his "comportment during trial as measured by some unarticulated standard of decorum for a *pro se* capital defendant." He also asserts that the judge used "philosophical rhetoric on the social virtues of capital punishment" to justify the penalty. Our review of the transcript causes us to disagree. The court discussed defendant's behavior before, during, and after the

trial in explaining its rejection of remorse as a mitigating factor. Moreover, as discussed in Part I(C), the judge's general comments about the death penalty were not improper.

The next contention is that bias was apparent in the court's refusal to hold another aggravation/mitigation hearing, its rejection of new mitigation evidence, and the denial of a continuance. As previously noted, however, the judge's decisions on these matters were proper and certainly do not establish bias.

Defendant complains about additional incidents that occurred during the trial and first sentencing proceeding. Some of these, involving the appointment of Dr. Bendheim as a defense expert, were decided against defendant on his first appeal, *State v. Schackart,* 175 Ariz. 494, 499–500, 858 P.2d 639, 644–45 (1993), and we decline to revisit them here. Others, including comments allegedly showing the court's irritation with defendant, should have been raised at that time and are therefore now waived. *See, e.g., Youngblood,* 173 Ariz. at 505, 844 P.2d at 1155. In any event, we cannot discern bias from them.

◼ Defendant also takes exception to the judge's questioning of Dr. Bendheim at the aggravation/mitigation hearing. A court, however, may interrogate witnesses as part of its duty to see that the truth is developed. *See* Ariz.R.Evid. 614(b); *State v. Mendez,* 2 Ariz.App. 77, 79, 406 P.2d 427, 429 (1965). After the judge questioned the psychiatrist, defense counsel orally moved for disqualification pursuant to Rule 10.1, Ariz.R.Crim.P., asserting that the questions "were oriented exclusively towards attempting to elicit testimony in support of aggravating circumstances or to ... try to detract from Dr. Bendheim's testimony in support of mitigating circumstances." The court responded:

[I]t is incumbent upon me to acquire all the information I can possibly acquire to help me make that [sentencing] decision. The questions posed to Dr. Bendheim were designed to give me some additional information that I had not been able to get from the questions by counsel and by Mr. Schackart. I assure you I have no predis-

position as to what the sentence will be at this time.

The determination of a Rule 10.1 motion lies within the discretion of the trial judge, and we will not interfere absent an affirmative showing of abuse. *See State v. Perkins,* 141 Ariz. 278, 286, 686 P.2d 1248, 1256 (1984). The court's inquiries concerned the defendant's mental state during the crime, the possibility that he had been untruthful during his psychological examination, his claimed remorse and desire to receive the death penalty, the timing of events surrounding the killing, and the materials upon which the doctor relied in forming his opinions. It appears that the judge was simply trying to gather "additional information" relevant to sentencing. Defendant has not overcome the presumption that the court was free from bias and prejudice. *See id.; State v. Henry,* 189 Ariz. 542, 944 P.2d 57 (1997).

■ Defendant's other complaints relate to a myriad of remarks and insinuations allegedly directed against him, as well as rulings made during various phases of the proceedings. We note first that disagreements over rulings are insufficient to support a recusal motion. *Id.* at 546, 944 P.2d at 61 (citing *State v. Curry,* 187 Ariz. 623, 631, 931 P.2d 1133, 1141 (App.1996)). Further, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute ... bias or partiality ... unless they display a deep-seated favoritism or antagonism." *Id.* at 546, 944 P.2d at 61 (citing *Liteky v. United States,* 510 U.S. 540, 555–56, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994)). The incidents cited by defendant show neither an extrajudicial source of bias nor any deep-seated favoritism.

■ Finally, defendant lodges vague claims of "some sort of impropriety" based on two other occurrences. The first involves a memo in which the judge referred to defendant's Rule 32 motion in his non-capital case as being "denied by me," when in fact it was denied by someone else. Defendant does not cite the context of the communication so that we may fully analyze his claim. Moreover, we fail to see how such a misstatement, standing alone, shows bias. In fact, the language and tone of the document demonstrate the court's concern that the case be handled with utmost fairness.

■ The second incident deals with a memo from state's attorney Bruce Ferg to defendant's former advisory counsel, Jim Himelic. Attached was a copy of the affidavit from defendant's mother that had been sealed by the court. Defendant insinuates that the judge either illegally unsealed the memo so Mr. Ferg could obtain a copy, or that procedural rules were violated because he did not receive a copy of any request to see the document. Again, defendant does not provide support for his allegations. *See State v. McMurtrey,* 151 Ariz. 105, 107–08, 726 P.2d 202, 204–05 (1986).

**F. Judge allegedly heeded requests to impose death**

■ Defendant asserts that the court improperly admitted and relied on statements at sentencing by the mother of the victim's fiancé. This witness, however, actually suggested that defendant should receive a life sentence rather than death and, in any event, the court later granted a defense motion to strike her remarks. We have held that victims' sentencing recommendations do not tend to establish aggravating or mitigating circumstances and are therefore irrelevant. *See State v. Mann,* 188 Ariz. 220, 228, 934 P.2d 784, 792 (1997) (citing cases). "Absent evidence to the contrary, we [assume] that the trial judge in a capital case is capable of focusing on the relevant sentencing factors and setting aside the irrelevant, inflammatory, and emotional factors." *State v. Bolton,* 182 Ariz. 290, 316, 896 P.2d 830, 856 (1995). Defendant makes no showing that the court did otherwise.

**G. Denial of request for mental health expert**

■ The trial court appointed Dr. Bendheim to examine defendant for the 1985 mitigation hearing. Defendant claims this was error because he had requested a different doctor. He also contends that the court improperly limited the expert's preparation

by appointing him on the morning of the hearing. These issues are waived because they were not raised in the first appeal. *See Youngblood,* 173 Ariz. at 505, 844 P.2d at 1155. Moreover, we see no error in the appointment of this witness and find no law entitling a defendant to experts of his own choice. We also believe that Dr. Bendheim had adequate time to prepare because he had previously authored a written evaluation of defendant and had testified at trial on these same matters.

## H. Alleged lack of aggravation evidence at sentencing

Defendant asserts, without argument, that the state failed to establish any aggravating factors because it did not put on evidence at the penalty hearing. However, A.R.S. § 13–703(C) provides that "[e]vidence admitted at the trial, relating to such aggravating or mitigating circumstances, shall be considered without reintroducing it at the sentencing proceeding." The court properly relied on the state's trial evidence, and we have determined that the (F)(6) circumstance was proven beyond a reasonable doubt. *See State v. Gulbrandson,* 184 Ariz. 46, 67, 906 P.2d 579, 600 (1995); *State v. Walden,* 183 Ariz. 595, 618, 905 P.2d 974, 997 (1995).

## I. Special verdict allegedly flawed

Defendant complains that the court prepared the sentencing order prior to hearing argument and failed to complete a written special verdict form. We have recently found that such a procedure does not constitute error. *See Walden,* 183 Ariz. at 620, 905 P.2d at 999. It was acceptable for the judge to read some of his findings from the original sentencing into the record where, as here, he properly considered everything that had been submitted. *See supra* Part III(B).

Defendant's claim that the lack of a written special verdict jeopardized his ability to prepare an appeal must also fail. *See State v. McKinney,* 185 Ariz. 567, 584–85, 917 P.2d 1214, 1231–32 (1996). The suggestion that he does not know the basis for his sentence is untenable. The minute entry and transcript of the proceedings clearly detail the court's reasoning.

## J. Appellant purportedly denied right of allocution

Although he gave a lengthy statement at resentencing, defendant argues that the court made his allocution "nothing but an empty ritual" by repeating part of its earlier sentencing order. *See State v. Nelson,* 122 Ariz. 1, 2, 592 P.2d 1267, 1268 (1979)(failing to consider defendant's statement at sentencing warrants remand). We find, however, that the court properly considered everything before it. There is no suggestion that defendant's remarks were ignored.

## K. This court struck portion of defendant's brief

On July 20, 1995, this court granted the state's motion to strike several sections of defendant's opening brief, on the basis that they attacked the validity of his convictions rather than his sentence. Defendant argues that this was error because: (1) on his previous appeal he was represented by counsel who failed to raise all the issues he thought were meritorious; (2) the court sometimes considers issues for the first time on appeal and should do so in a capital case; and (3) the underlying "conviction-stage" evidence was relied on to establish aggravation and mitigation and is therefore related to the sentence.

We decline to revisit our ruling for several reasons. First, the stricken arguments relate to pretrial and guilt-phase issues that clearly could have been raised in the first appeal. *See Youngblood,* 173 Ariz. at 504–05, 844 P.2d at 1154–55 ("With even greater force, preclusion should occur on remand after direct appellate review has been exhausted . . . . the 'efficient and orderly administration [of justice] requires some point in time at which it is too late to raise new issues on appeal.'"); *cf. State v. Rossi,* 171 Ariz. 276, 281, 830 P.2d 797, 802 (1992) (new claim arising *after* defendant's previous appeal was considered although not raised in brief). At that time, we searched the record for fundamental error and found none. *Schackart,* 175 Ariz. at 503, 858 P.2d at 648. Finally, any claim that counsel improperly

failed to develop certain issues on appeal should be addressed in a post-conviction relief proceeding. *See* Ariz.R.Crim.P. 32.1.

## IV. Miscellaneous Challenges to Imposition of Death Sentence

### A. Failure to consider natural life sentence

■ Defendant complains that the judge did not consider imposing a life sentence without possibility of release, yet argues that it would be inappropriate for this court to reduce his sentence to natural life. We are unable to see the logic in this position. In any event, at the time of this murder, A.R.S. § 13–703(A) did not provide for the possibility of a natural life sentence. Therefore, that penalty is not available here. *See* A.R.S. § 1–246; *State v. Vineyard*, 96 Ariz. 76, 80, 392 P.2d 30, 33 (1964).

■ Alternatively, defendant asks this court to consider the natural life option as a mitigating factor in its independent review. We have previously held, however, that the availability of a "real life" sentence is not appropriate mitigation. *See State v. Soto–Fong,* 187 Ariz. 186, 211, 928 P.2d 610, 635 (1996).

### B. Cruel and unusual to execute defendant now

Defendant argues that executing him after he has spent many years on death row would constitute cruel and unusual punishment under the Eighth Amendment to the United States Constitution and article 2, § 15 of the Arizona Constitution. In *Lackey v. Texas,* the Supreme Court declined to review the same issue, although Justice Stevens filed a memorandum noting his belief that this concern should be further explored. 514 U.S. 1045, 115 S.Ct. 1421, 131 L.Ed.2d 304 (1995), *petition for reh'g denied,* — U.S. —, 117 S.Ct. 1465, 137 L.Ed.2d 568 (1997). Since then, so-called *"Lackey* claims" have found little support in the courts that have addressed them. *See McKenzie v. Day,* 57 F.3d 1461, 1466–67 (9th Cir.1995) (delay in carrying out executions benefits inmates, allowing them to extend their lives and perhaps obtain commutations, reversals, or,

rarely, complete exoneration); *State v. Smith,* 280 Mont. 158, 931 P.2d 1272, 1288 (1996) ("If an Eighth Amendment challenge based on delay were to prevail, then the procedures designed to promote fair adjudication in death penalty cases would in themselves be used to ultimately defeat their own purpose."); *Janecka v. State,* 937 S.W.2d 456, 476 (1996) (no factual basis to prove psychological torment and law does not recognize present claim).

■ We perceive no constitutional violation. There is no evidence that Arizona has set up a scheme prolonging incarceration in order to torture inmates prior to their execution. *See McKenzie,* 57 F.3d at 1466. Moreover, defendant's claim that the state is solely responsible for the delays in this case is inaccurate. Those were in large part caused by the unlikely circumstance of a court reporter failing to prepare an adequate record and the subsequent painstaking process of reconstructing one. Additionally, defendant has requested and received numerous continuances. *See Smith,* 931 P.2d at 1288; *McKenzie,* 57 F.3d at 1466–67.

### C. Cruel and unusual to execute after serving sentences

Defendant asserts that it would be cruel and unusual to execute him after he has served out his consecutive prison terms (totaling 70.5 years) for the non-capital offenses. We disagree, however, with his premise that Arizona law requires sentences to be served in the order in which they were imposed. *See* A.R.S. §§ 13–706(A), 13–703.

### D. Governor Symington's hard labor program

Defendant complains about a statement that the former governor allegedly made concerning a plan to "devise a hard labor program for our death row inmates, to help them pass the time while the courts process those endless appeals." He has not cited the time or place of this statement, nor has he provided details of any hard labor program to which he has been subjected so that we may examine its legality as applied. *See* A.R.S. §§ 31–251 through –254 (authorizing,

among other things, the director of the Department of Corrections to classify prisoners as eligible for hard labor programs).

### E. Joint sentencing hearing

■ In a brief paragraph, defendant states that by holding a joint sentencing hearing on his capital and non-capital charges, the court heard inadmissible and prejudicial information. He does not specify what was improper and fails to provide legal authorities for us to consider. *See State v. Bolton,* 182 Ariz. 290, 298, 896 P.2d 830, 838 (1995). Moreover, the procedure in question was permissible. *See State v. Greenawalt,* 128 Ariz. 150, 170, 624 P.2d 828, 848 (1981).

### F. Prosecutorial misconduct

■ Defendant alleges that the prosecutor made misleading statements during trial about evidence found at the crime scene. These claims were not raised in the trial court or on his first appeal, and are therefore waived. *See Bolton,* 182 Ariz. at 297, 316, 896 P.2d at 837, 856; *Youngblood,* 173 Ariz. at 505, 844 P.2d at 1155. Further, the majority of statements were made at a hearing before the judge alone, and all appear to have been reasonably supported by the evidence. We fail to see how they could have unfairly influenced the verdict. *See Bolton,* 182 Ariz. at 307, 896 P.2d at 847.

### G. Death penalty unconstitutional

Defendant raises numerous constitutional challenges to Arizona's death penalty, which have been dispositively addressed in previous cases, as follows:

1. Imposed arbitrarily and irrationally, *see Walton v. Arizona,* 497 U.S. 639, 654, 110 S.Ct. 3047, 3057, 111 L.Ed.2d 511 (1990); *Lewis v. Jeffers,* 497 U.S. 764, 777, 110 S.Ct. 3092, 3100, 111 L.Ed.2d 606 (1990); *McKenzie v. Day,* 57 F.3d 1461, 1466–67 (9th Cir.1995).

2. Lethal gas or injection cruel and unusual punishment, *see State v. Gonzales,* 181 Ariz. 502, 507, 892 P.2d 838, 843 (1995); *State v. Hinchey,* 181 Ariz. 307, 315, 890 P.2d 602, 610 (1995).

3. Death unconstitutionally required if one aggravating factor found, *see Walton v. Arizona,* 497 U.S. 639, 651–52, 110 S.Ct. 3047, 3056–57, 111 L.Ed.2d 511 (1990).

4. No right to death qualify sentencing judge, *see State v. Atwood,* 171 Ariz. 576, 645–46 n. 21(3), 832 P.2d 593, 662–63 n. 21(3)(1992).

5. No statutory standards for weighing, *see id.* at n. 21(4).

6. Defendant must prove mitigating factors, *see id.* at n. 21(11).

7. Death-eligible class not sufficiently narrowed, *see State v. West,* 176 Ariz. 432, 449, 862 P.2d 192, 209 (1993) (citing *Lowenfield v. Phelps,* 484 U.S. 231, 244, 108 S.Ct. 546, 559, 98 L.Ed.2d 568 (1988)).

8. State does not separately prove death is appropriate, *see State v. White,* 168 Ariz. 500, 515, 815 P.2d 869, 884 (1991).

9. Consideration of mitigation evidence too restricted, *see id.* at 514–15, 815 P.2d 869; *Walton,* 497 U.S. at 651–52, 110 S.Ct. at 3056–57; *State v. Gonzales,* 181 Ariz. 502, 513, 892 P.2d 838, 849 (1995).

10. No meaningful distinction between capital and non-capital cases, *see State v. Salazar,* 173 Ariz. 399, 411, 844 P.2d 566, 578 (1992).

11. Discriminates against poor, young, male defendants as applied, *see Jeffers v. Lewis,* 38 F.3d 411, 419 (9th Cir.1994).

12. Judge alone makes aggravation and mitigation findings, *see id.* at 419.

13. No proportionality review, *see Pulley v. Harris,* 465 U.S. 37, 50–51, 104 S.Ct. 871, 879, 79 L.Ed.2d 29 (1984); *State v. Salazar,* 173 Ariz. at 416–417, 844 P.2d at 583–84 (1992).

## V. Independent Reweighing

■ We have determined that the trial court properly found the (F)(6) aggravating circumstance based on cruelty. This court has previously affirmed death sentences where only one prong of the (F)(6) factor is found in aggravation and some mitigation,

albeit minimal, has been presented. *See State v. Hinchey,* 181 Ariz. 307, 314–15, 890 P.2d 602, 609–10 (1995); *State v. Villafuerte,* 142 Ariz. 323, 332, 690 P.2d 42, 51 (1984); *State v. Smith,* 138 Ariz. 79, 86, 673 P.2d 17, 24 (1983). That is precisely the situation here. Having reweighed the evidence, we find that the mitigation is not sufficiently substantial to call for leniency. The sentence is affirmed.

JONES, V.C.J., and FELDMAN, MOELLER and MARTONE, JJ., concur.